## COMMERCIAL UNION ASSURANCE CO., Ltd., v. CREEK COTTON OIL CO.

No. 11272—Opinion Filed Oct. 9, 1923.

Rehearing Denied Dec. 18, 1923.

(Syllabus.)

1. **Insurance—Action on Fire Policy—Cotton Covered—Findings—Evidence.**

The finding of the trial court that the 51 bales of cotton commonly known and called "linters" was covered by an insurance policy which described the property insured as follows, to wit: "Cotton baled and unbaled, ginned and unginned, seed cotton and cotton seed," is not clearly against the weight of the evidence.

2. **Same—Definition of "Linters."**

"Linters" or "cotton linters" is an inferior grade of cotton, obtained by reginning cotton seed.

3. **Accord and Satisfaction—Compromise and Settlement— Separable Demands.**

Where a demand may be separated, a portion of which is liquidated and a portion unliquidated, a payment and acceptance and discharge of the liquidated amount is not a satisfaction of the unliquidated claim, unless it be made on some new consideration; said payment operates only in discharge of the amount paid and a creditor may maintain an action for the unliquidated amount of said claim.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by the Creek Cotton Oil Company against the Commercial Union Assurance Company, Ltd., of London, Eng. Judgment for plaintiff, and defendant brings error. Affirmed.

Geo. B. Rittenhouse, Gordon Stater, and P. T. McVay, for plaintiff in error.

Thrift & Davenport, for defendant in error.

McNEILL, J. This action was commenced by the Creek Cotton Oil Company to recover for loss on an insurance policy issued by the defendant company on the following property to wit: "Cotton baled, and unbaled, ginned and unginned, seed cotton and cotton seed." Fire damaged a certain amount of cotton, including 51 bales of what is commonly called "linters." The only controversy is whether the fifty-one bales of cotton commonly called "linters" comes within the property described in the policy. There is practically no difference in the evidence regarding what "linters" are. In ginning cotton, the seed cotton passes through the gin, and the long lint is separated from the seed and baled. The seed is carried on through to the seed house. The seed when taken to the oil mill goes through another gin especially constructed to remove the short lint, and the short lint is removed, and baled and called "linters." The only difference between what is known as an ordinary bale of cotton and a bale of linters cotton is the bale of cotton is the long lint separated from the seed by the first ginning, while the linters is the short lint taken from the seed through the second process of ginning. Both are baled and about the same size and weight.

Mr. Epps for the oil company testified in substance that there were nine different recognized grades of cotton. Contracts for the sale of cotton are controlled by the two large exchanges, and in selling cotton on the market the term "bale of cotton" refers to cotton of a certain grade. The lower grades of cotton are sold under special contract. In addition to "linters" cotton there is cotton that does not open and it is opened by machinery; that kind and character is a lower grade and called "grabbots." The difference between what is termed an ordinary bale of cotton and a bale of "linters" cotton is the length of the staple. The ordinary cotton contains the

longer staple or lint, and the linters the short lint. There is a great deal of difference in the value. In the instant case the long lint cotton when baled was valued at from 20 to 25 cents per pound, while the linters was less than five cents per pound. There were only two witnesses who testified in the case regarding what "linters" were, and there is very little difference between their testimony. Both of them testified that a "bale of cotton" when sold referred to lint cotton produced from first ginning and the bale of linters is that portion of the lint taken off the seed at the oil mill. The court found from the evidence that linters was cotton within the meaning of the terms of the policy.

The plaintiff in error, however, relies upon certain cases to support its contention that linters is not cotton within the term "cotton baled or unbaled, ginned or unginned, seed cotton or cotton seed." The first case relied upon is the case of O., R. I. & P. Ry. v. Cleveland, 61 Okla. 64, 160 Pac. 328. In that case the railroad company had two different tariffs, one for cotton and a different one for linters, and was advised that the cotton shipped was "grabbots." They issued a bill of lading describing the same as 61 bales of cotton. It was contended the bill of lading incorrectly described the freight, and violated the statute, which required the bill of lading to properly identify the freight. The evidence disclosed in that case there was a general custom prevailing with shippers of cotton after securing a bill of lading to draw a draft with the bill of lading attached, and the draft would be paid before the cotton arrived. In that case the court stated that the term "bale of cotton," as used in the commercial and business world, means a standard package of merchantable lint cotton separated from the seed, weighing approximately 500 pounds, and classable under one of the recognized market grades. This is in exact accord with the testimony of Mr. Epps. The policy in the instant case does not refer to "bales of cotton," but refers to "cotton baled or unbaled." Nor does the policy attempt to limit the same to any particular grade. There might be some merit in plaintiff in error's contention, if it were shown there was a custom prevailing among the insurance companies when using the term "cotton baled or unbaled," that it referred to only that grade of cotton which is sold as baled cotton in the commercial and business world or on the cotton exchange, and did not refer to the inferior grades sold under special contract.

The case of Board of Mississippi Levee Com'rs v. Refuge Cotton Oil Co. (Miss.) 44 South. 828, is also cited and relied upon. In that case the court stated that "grabbots" and "linters" cotton are both very low and inferior grades of cotton and command nothing like the price in the market of ordinary lint cotton ginned in the ordinary gin. The court in that case held that the Legislature in levying a tax to be placed upon "cotton" did not include "grabbots" or "linters." This was apparent from the fact that by so construing it, it would be placing the same tax upon this inferior grade of cotton as it would upon the merchantable cotton or cotton sold upon the exchange. The court, however, did say it was cotton.

The case of Houssels v. Coe & Hampton (Tex. Civ. App.) 159 S. W. 864, is also cited, but there is nothing in that case which we think has any application to the facts in the case at bar.

The case of Soudan Planting Company v. Stevenson (Ark.) 102 S. W. 1114, is also cited. That case we think has no application to the case at bar, but simply construes a contract for the sale of land, where the party agreed to accept cotton in place of cash payments. The court there, in construing the contract, held the contract referred to cotton grown on the land sold. There was evidence that the cotton grown on that land was of greater value than the average cotton placed on the market.

We should give the policy a fair and reasonable construction. A person owns a cotton mill wherein he has stored cotton of different grades and insures the same. The company insures him against loss and defines his products as "cotton baled and unbaled, ginned and unginned, seed cotton and cotton seed." Can it be said that an inferior grade of cotton baled does not come within the meaning of the term "cotton baled and unbaled"? We think not. The case was tried to the court without a jury, and the court found as a matter of fact under the evidence that the bales of cotton commonly called linters came within the meaning of the term "cotton baled and unbaled." We think that finding is supported by the evidence and a fair and reasonable construction of the contract. There might be some weight to plaintiff in error's contention if they were liable for so much a bale, irrespective of the value of the grade or value of the cotton, but when the cotton is an inferior grade of cotton, they are only liable for the value

of that inferior grade. There is no evidence that in writing an insurance policy there is any attempt to make any classification of the grade of cotton. The company is not prejudiced in any way because the cotton is of an inferior grade. The liability of the company is the value of the grade of cotton destroyed. To hold that "linters" was not within the terms of the policy would be to hold that it was not cotton. This would be contrary to the evidence in the case and every adjudicated case cited.

The other assignments of error related to the following facts: The answer pleaded a contract of settlement and accord and satisfaction. The company in paying for the loss over which there was no dispute issued a check with a receipt attached, which recited the accepting of the check was a discharge of all claims and demands against the company. The plaintiff as a reply denied said facts and pleaded and testified to about the following state of facts: That after the loss the insurance adjuster came to view the loss, and denied liability for the linters, but acknowledged liability for the loss of the other cotton.

The testimony upon this question is substantially as follows: Mr. Epps and the adjuster figured the number of bales of cotton destroyed, agreed upon the weight per bale, and added up the weight, and agreed upon the price. Mr. Epps testified that he then gave the adjuster the tickets for the linters. The adjuster picked up the tickets and looked at them and says: "No; we cannot consider linters as this policy does not include linters." Mr. Epps testified he stated, in effect: "What do you mean? It includes cotton baled and unbaled, ginned and unginned?" The adjuster said, "No, sir." Mr. Epps testified then, that before he would proceed further, he would have to consult an attorney; and he went and consulted an attorney and came back and the adjuster had the proof of loss made out. Mr. Epps said, "This just covers the cotton," and he said, "Yes, sir"; and Mr. Epps said he would sign it, and then turn around and sue for the linters. The adjuster said: "Your attorneys haven't properly advised you; they haven't gone into this: when they do go into this, they will find that this policy does not cover linters." Mr. Epps said, "I will sign the proof of loss for the cotton and so far as the linters is concerned, I will fight it out in court," and the adjuster said, "All right," and Mr. Epps signed the proof of loss.

Mr. Nelson of the company testified, in substance, that there was no controversy over the loss of the cotton, and contended with Mr. Epps that the policy did not cover linters, and he denied liability for linters, and Mr. Epps stated that he would not go on with the settlement until he went and consulted an attorney; that when Mr. Epps came back from talking to his attorney, he demurred on signing the proof of loss because it did not include the linters, and he had refused to entertain a claim for linters, and then Mr. Epps signed the proof of loss which showed the loss of the cotton over which there was no controversy; that he as agent made a report to the company, stating he had denied liability as to linters. Mr. Nelson further testified:

"Oh, I would not say that there was real controversy, no; Mr. Epps filed a claim that I simply rejected and denied liability for, that is the claim covering the linters. There was no controversy about the value of the cotton. The claim covering cotton was in order and the claim covering the linters was not in order. Therefore, I denied liability."

When the check arrived it had attached thereto, or as a part thereof, a receipt stating it was in full settlement of all claims and demands of whatever nature. Mr. Epps refused to accept the check and immediately served a notice upon Mr. Johnson, who was the local agent of the company at Bristow, and also interested in the bank where the check was deposited. Said notice is substantially as follows:

"It is expressly understood and agreed that in making a settlement for loss by fire, the amount did not cover loss sustained, if any, by insurance on what is known as linters, and the insurance company does not admit liability nor does the insured admit nonliability. All rights in this respect being reserved."

It was contended the evidence was incompetent to vary the terms of a written instrument of settlement, and that Mr. Johnson, the local agent, had no authority to accept service of notice, because he was interested in the bank, and the receipt was in full settlement of the claim. Under the statement of both parties there was no controversy over the loss of the other cotton. There was no dispute either as to the amount or the value thereof. That part of the claim was a liquidated claim. There was a dispute over the liability of the question of linters.

This court in the case of Sherman v. Pacific Coast Pipe Line Co., 60 Okla. 103, 159 Pac. 333, said:

"While, if a demand is unliquidated or disputed, payment and acceptance in discharge of the same of a less sum than that claimed will constitute an accord and satisfaction, yet in cases where the debt is liquidated and is due (except where changed by statute) the general doctrine is applied that payment by the debtor and receipt by the creditor of a part thereof is not a satisfaction of the whole, unless it be made on some new consideration, such payment operating only as a discharge of the amount paid, and the creditor may maintain an action for the balance."

In the case of Sanditen v. Allied Refining Co., 84 Okla. 47, 202 Pac. 316, this court said:

"Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed in satisfaction operates as an accord and satisfaction in the absence of fraud."

By applying the principle in the above cases announced, it would seem there was no consideration for the settlement of the claim for the linters. According to the statement and evidence of Mr. Epps at the time of making out the proof of loss, the proof of loss omitted the claim for linters and it was agreed that the claim for linters should not be included and he would be free to bring suit for that claim.

We think there was no error in the admission of the evidence, and the evidence is sufficient to support the finding of the court that the receipt was only a settlement of the liquidated claim, and had no reference to the unliquidated claim, nor was there any consideration for the same.

For the reasons stated, the judgment is affirmed.

JOHNSON, C. J., and KANE, NICHOLSON, COCHRAN, and MASON, JJ., concur.