CAMDEN FIRE INS. ASS'N of CAMDEN, N. J., v. KOURI.

No. 24818.    March 26, 1935.

James C. Cheek, Frank E. Lee, and E. W. Smith, for plaintiff in error.

Grover L. Bynum and C. J. Pinkston, for defendant in error.

PHELPS, J. On August 20, 1930, the defendant insurance company, in consideration of the premium paid by plaintiff, issued its fire insurance policy covering the plaintiff's retail store in Dewar, Okla. The policy was the ordinary Oklahoma standard form, with the usual iron safe and inventory and book clauses, and it further provided that in case of loss the defendant would indemnify plaintiff only to the extent of the proportion of the insurance thereby granted to the whole insurance covering such property, including that of other companies, and that the entire insurance payable should not exceed three-fourths of the actual value of the property destroyed. As illustration, at the time of the fire hereinafter described, plaintiff had $14,500 total insurance, of which the defendant had insured $2,000; thus the defendant's liability was limited to 4/29ths of three-fourths of the value of the property destroyed.

Until a month or two before the fire, plaintiff had carried $3,000 insurance, but beginning in July, 1931, he increased this insurance to $14,500 by obtaining policies from other companies. He stated that he did this because a representative of a credit rating agency had informed him it was necessary that he have more insurance to cover his $25,000 stock of goods. He did not inform the defendant of his taking out this additional insurance, in compliance with the terms of the policy, but the significance of his failure to inform the defendant was not urged.

The store and all the stock were completely destroyed at about 2:00 or 3:00 a. m. on August 10, 1931. A witness testified that between 10:00 p. m. and midnight of the evening before, he had seen two men in the front of the store, with the electric lights turned on, and that one of them resembled plaintiff, but that he could not be certain as to the identity of the parties, nor exactly what time it was.

Plaintiff sued upon the policy and recovered a verdict and judgment of $2,000.

In appealing, the defendant first complains that the inventory indicates some men's suits and furnishings were burned,

and that the policy does not cover that class of goods. In the words of the policy, it insures: "stock of merchandise consisting chiefly of dry goods, shoes, ladies' ready-to-wear, etc., and such other merchandise as is usually kept for sale in dry goods stores."

Certain witnesses testified that men's suits and furnishings are not classed as "dry goods." That fact would not prevent their being insured under this policy. The inventory indicates that the men's furnishings constituted a comparatively small portion of the entire stock of merchandise, which, the description states, consisted **chiefly** of dry goods, shoes, ladies' ready-to-wear, etc. Granted that men's suits are not included in dry goods, still they are included here in that portion of the merchandise outside of the dry goods, which were the chief portion, it not being disputed that men's furnishings are merchandise.

The defendant next complains that plaintiff did not comply with the policy's inventory and iron safe clause. That clause reads:

"It is made a condition of this insurance: (1) That the insured under this policy shall take an inventory of the stock and other personal property hereby insured at least once every twelve months during the term of this policy, and unless such inventory has been taken within one year prior to the date of this policy, one shall be taken in detail within thirty (30) days thereafter; (2) that the insured shall keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit; (3) that the insured shall keep such books and inventory securely locked in a fire-proof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the building where such business is carried on; (4) that in case of loss the insured shall produce such books and last inventory."

An inventory was made in January, 1930, some eight months prior to the date of the insurance policy. Plaintiff testified that this inventory burned when the store was destroyed. The next inventory was made in January, 1931, this one having been kept in the iron safe. It was produced after the fire, and was introduced in evidence during the trial. In May, 1931, plaintiff was contemplating moving part of his stock to the town of Dustin and, in preparation therefor, compiled a list of at least a portion of his stock; it is difficult to determine whether this was really an inventory; he said it

"wasn't just exactly an inventory" and that it was "torn up."

We observe that the policy requires only that the insured shall take an annual inventory; hence, if plaintiff took an inventory in May, he was not required to do so by the terms of the policy. The inventory of January, 1931, had been taken only eight months prior to the fire. Notwithstanding the provision "that in case of loss the insured shall produce such books and last inventory," we think the January, 1931, inventory was sufficient to constitute substantial compliance with the clause in this particular, especially when we bear in mind that the purpose of requiring said inventory is only that the insured and the insurer may have reasonable means of ascertaining the value of the items destroyed. We have carefully examined the inventory which was offered in evidence. A proper consideration of the items and values listed thereon, when checked against and compared with the stock receipts and cash and credit sales as disclosed by the ledger book, which the plaintiff also preserved in the safe, readily affords a means of arriving at a substantially accurate appraisement of the loss.

Defendant urges that the inventory is too general, and that even "an expert accountant could not take plaintiff's records and tell with any approximate certainty the amount of goods covered by the policy." We do not agree. We think the defendant is insisting on a greater amount of detail in the inventory than is necessary. For instance, the defendant says: "The items of shoes are all listed under the general title 'men's, ladies' and children's shoes and boots.' In other words, there is absolutely nothing in the records of plaintiff relating to shoes to show whether they are men's, ladies' or children's shoes and boots." The answer to that contention is that it does not matter. Opposite each item of shoes in the inventory appear the number of pairs of that kind of shoes, and the price. Of course, it would have been more satisfactory to be more specific, but we cannot say that in the inventory there is such uncertainty as would have unduly handicapped defendant in investigating the loss.

The purchases and sales record, in the form of a book, was largely made up of items described as "Mdse."; nevertheless the names of the wholesale houses revealed in almost every instance the nature of the "merchandise" received. Less than $150 worth of it may have been groceries, which were not insured, but the total value of

merchandise and dry goods listed is at least $4,000 more than was required in order to say that plaintiff's total insurance exceeded three-fourths of the stock. Plaintiff also listed the total cash amounts of his sales from January 2, 1931, daily, until the date of the fire. It seems reasonable that the amount of goods received could have been added to the January, 1931, inventory, and from the total of their value there could have been subtracted the total daily sales, and the remainder would have formed at least an approximate index of the goods on hand at the time of the fire.

Considering that the plaintiff could neither read nor write and that his wife, who assisted him in keeping what records he had, was not an experienced business woman, the inventory and the sales and purchase book were far more complete than we would have expected. As said by us in Hartford Fire Ins. Co. v. Sullivan, 74 Okla. 241, 179 P. 24:

"The courts should not permit the avoiding of obligation when a loss occurs through mere technicalities having no substantial foundation in justice and reason. * * * As a rule, property owners availing themselves of insurance are inexperienced laymen, and not familiar with the ins and outs, twists and turns, connected with the supposed intricacies of insurance."

We hold that the manner of keeping and the furnishing of the inventory and the book of sales and purchases were in substantial compliance with the provisions of the policy. Relating thereto plaintiff testified that the valuations were correct and that the total value of his stock was $25,000. The total value as per the inventory was $24,438.82, which is so considerably in excess of that valuation necessary to a liability of $2,000 on the part of the defendant that the plaintiff could easily have had $4,000 or $5,000 worth of merchandise burned which was not covered by the policy, and still the defendant could not complain.

Defendant further says that error occurred when the court permitted the plaintiff to show, on cross-examination of defendant's witness, that another fire insurance company had paid its liability for loss occasioned in this same fire. It was also shown that when the other company paid its loss it was as the result of a compromise. We think that this was error. Whether the other company admitted liability was clearly inadmissible as establishing the liability of this defendant. Cosmopolitan Fire Ins. Co. v. Gingold (Ala. App.) 57 So. 226; Glens Falls Ins. Co. v. Melott (Tex. Civ. App.)

174 S. W. 700. But we shall discuss below whether, under the peculiar circumstances of this particular case, this was reversible error.

Defendant also complains of instruction No. 8, which reads as follows:

"You are further instructed in this case that the terms and provisions of the policy issued in this case govern and control both in respect to the plaintiff and the defendant, and that each side must act in substantial compliance therewith. If you find that the plaintiff in this case did not keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash and credit, or did not keep such books and his inventory securely locked in a fire-proof safe at night and at all times when the store mentioned in the policy of insurance sued upon herein was not actually open for business, or in some secure place not exposed to fire which would destroy the building where such business was carried on, or that plaintiff did not, after the loss complained of by him herein, produce said books and last inventory, if demanded by the company, then in either of such events your verdict should be for the defendant.

"However, in this connection the court instructs you that a strict and actual compliance with the terms of the policy, of this provision, is not absolutely and actually necessary as to every detail, but that if the plaintiff in this case substantially complied **or made an effort** to substantially comply with the provisions of the policy in this respect, then your verdict in this case should be for the plaintiff, provided that the plaintiff has made out his case by a preponderance of the evidence in all the other respects herein before instructed." (Emphasis ours.)

This, too, was error. In many cases have we held that a substantial compliance with the provisions of the policy is all that is necessary, but never have we gone so far, nor do we know of any other court's having gone so far, as to announce that a mere **effort** to substantially comply is sufficient. But, on the other hand, there is no dispute in the record as to what the plaintiff actually **did** toward substantial compliance, regardless of "efforts." If what he in fact did amounted in law to substantial compliance, and the evidence on that issue is undisputed, then the foregoing error in the instruction is harmless. There can be no doubt that if this instruction could have, or did invade the rights of the defendant in any manner, it was in relation to the iron safe and inventory clause. But, above, we have held that the evidence discloses a satisfactory compliance with that provision. Had the defendant introduced evidence contra-

dicting or denying that the plaintiff failed to keep an iron safe and to preserve the records properly therein, or had introduced any evidence of its own that the inventory was a faked affair and was not the inventory which the plaintiff had made in 1931, or had denied or disputed plaintiff's evidence on this point in any particular, then the instruction would have constituted prejudicial error. The evidence conclusively establishes a substantial compliance by the plaintiff. It is therefore immaterial that under the instruction the jury would have been authorized to find that the plaintiff need only have made an effort to comply.

Similarly, probably the admission of the evidence that another company had settled the claim against it, for loss sustained in the same fire, would also have constituted grave error if any evidence had been presented in favor of a defense, to a degree sufficient to sustain a verdict for the defendant. The fact that another company had settled the claim could not have harmed the defendant except upon the question of the defendant's own liability. The only defense pleaded which could have been affected by the error was that of incendiarism—that the plaintiff caused his own fire. But the evidence of defendant in that particular established nothing more than a motive for same, in the procuring of additional insurance within a short time preceding the fire. This, plus the testimony of the boy who saw two men in the store on the night of the fire, with the electric lights turned on, neither of whom could he swear was the plaintiff, would not have been sufficient to sustain a verdict for the defendant on the ground that plaintiff caused his own fire. Hence, since the probative effect of defendant's evidence on this phase of the case would have been insufficient in law to sustain the conclusion that the plaintiff started the fire, the fact that another insurance company had settled its alleged liability could not materially harm the defendant, for the defendant failed, regardless thereof, to present sufficient evidence of incendiarism.

There can be no doubt that the ruling and the instruction are error. Nevertheless, and at the same time realizing that we are not a trial court, but must view the matters from the viewpoint of an appellate court, we cannot help but examine the record from its four corners and gauge the evidence in the light of its legal significance. The question comes to us repeatedly, Should this case be remanded for another trial, when the facts indicate liability as a matter of law? The only matter disputed by the defendant, from a fact viewpoint, was that of value. The question of value was submitted to the jury under proper instructions.

Regardless of errors, the following is true here, as a matter of law: The plaintiff paid for the policy; the policy was issued; the plaintiff owned the goods; the policy covered the goods; the goods were burned; the plaintiff, in substantial compliance with the requirements of the policy, kept a sufficient inventory and purchase and sales record, which were kept in the iron safe; the said inventory and record were furnished the insurer after the loss. The defendant's **evidence** did not dispute any of the foregoing; its arguments and contentions did. The admission of the evidence that another insurance company paid the claim could not have harmed the defendant's defense, for that which the defendant offered as a defense was not sufficient from an evidentiary viewpoint to **constitute** a legal defense. Neither did the instruction harm the defendant, for the evidence clearly established a substantial compliance with the provisions of the policy, regardless of the fact that the jury, under said instruction, was authorized to conclude that a mere effort to comply would have been sufficient. For those reasons, under the circumstances in this particular case, the errors were harmless.

Finding no good reason why a new trial should be had, we affirm the judgment of the lower court.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and CORN, JJ., concur.