## METROPOLITAN LIFE INS. CO. v. RICHTER.

No. 25299.   Sept. 17, 1935.

490

Mason, Williams & French, for plaintiff in error.

E. F. Maley, for defendant in error.

PHELPS, J. This is a suit on an accident policy. In appealing from an adverse judgment of the lower court, wherein plaintiff recovered judgment for total disability from March 20, 1931, to June 19, 1932, less a payment received, the principal contention of the defendant insurance company is that it completely and finally settled with the plaintiff, shortly after the accident.

Plaintiff was a supervising architect. His work was the drawing of plans and actual supervision of the construction following such plans, requiring considerable climbing and other physical activity incident to proper inspection and supervision. On March 20, 1931, he fell and sustained a serious knee injury which confined him to bed until April 17, 1931, when he was able to leave the house, but not to work. He continued in this condition until May 3, 1931, when he filed his claim with the defendant, which immediately sent him a check based on defendant's interpretation of the claim. It is plaintiff's cashing of the check which is relied on here as constituting an accord and satisfaction. Subsequently plaintiff's condition grew worse and he was never able to resume his occupation.

The policy provided $50 per week for such total disability as should "continuously and wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation," and $25 per week for such partial disability as should

"continuously disable and prevent the insured from performing some one or more important daily duty or duties pertaining to his occupation."

The check was for an amount equaling $50 per week from the date of the accident to April 17, 1931, plus $25 per week from April 17, 1931 (when plaintiff could leave the house), to May 3, 1931 (date of claim). Thus it appears that defendant assumed the latter period to be one of partial disability only, though no statement to that effect appeared upon the face of the check, nor did the parties by conversation or otherwise agree that such was the fact. The defendant, however, contends that plaintiff's statement of claim, followed by his indorsement and cashing of the check based on that claim, considered together, constituted a transaction evidencing the agreement of the parties that the period in question was one of partial disability only, and that plaintiff accepted the check in full, final, and complete satisfaction of all present and future liability covering all results of this accident.

Let us examine the pertinent parts of the claim:

"14. How long were you necessarily confined to the house solely by this injury? From March 20, 1931, to April 17, 1931.

"15. How long were you totally disabled, solely by this injury, so that you could not attend to any part of the duties of your occupation? From March 20, 1931, at 10 o'clock a. m., to April 17, 1931, at 6 o'clock p. m.

"18. How long were you partially disabled, solely by this injury, so that you were unable to attend to certain important daily duties of your occupation? (Do not include any period of total disability in this.) From April 17, 1931, * * * to May 3, 1931. * * *

"19. If partial disability is claimed, state the particular duties you were unable to perform during the entire period of partial disability. **Disability total.**

"20. **Has disability resulting from this accident ended** and is this your **complete and final** claim on account of said accident? Not well, but I am able to perform part of my business in part."

From a legal viewpoint the answers to questions 14, 15, 18 and 20 are inconsistent with the answer to question 19. However that may be, two facts stand out prominently: (1) There is at least uncertainty or ambiguity as to whether plaintiff claimed partial disability from April 17th on; (2) plaintiff did not state that his disability had ended and that this was his final claim, but, on

the contrary, stated that he was "not well." Yet, in the face of those two facts, defendant did not take from the plaintiff the usual and customary release, but immediately forwarded the check, bearing on its face the words, "For full payment of claim under above numbered policy for injuries sustained or illness beginning on or about 3-20-31"; and on its reverse side, under the line for indorsement, the words, "Received payment in full as detailed on reverse side." The check was written in New York and forwarded to the local agent, who delivered it to plaintiff without **remark.**

Defendant's argument is based upon the principle announced in Kubatzky v. Pittsburgh Plate Glass Co., 119 Okla. 236, 249 P. 412, that:

"Where a claim is unliquidated or in dispute, payment and acceptance of a less sum than claimed in satisfaction operates as an accord and satisfaction, as the rule that receipt of a part of the debt due, under an agreement that it shall be in full satisfaction, is not a bar to any action to recover the balance, does not apply where the plaintiff's claim is disputed or unliquidated, and the fact that the creditor was not bound to make any abatement of his claim, or that the amount accepted was much less than the creditor was entitled to recover, and would have recovered had he brought action, does not in any way affect the rule."

The trial court was correct in refusing to apply the doctrine of the Kubatzky Case to the issue here involved. In that case there was a real dispute as to the amount owing, while in the instant case there was no dispute at all. The general rule to be deduced from the authorities seems to be that there must be an honest dispute based on real grounds for dispute.

Neither may we say that this was such an unliquidated demand as falls within the rule. The amount due was easily calculable upon investigation. The only requirement was first to determine whether plaintiff was totally or partially disabled to work at his profession between April 17th and May 3rd. Due to the ambiguous nature of plaintiff's claim it was to the insurance company's financial advantage, apparently, not to call on plaintiff to make his claim more definite and certain, but to accept the interpretation thereof most favorable to the company, forward the check and not seek the usual formal release, which, in the light of the evidence, would most certainly have been refused by plaintiff. Plaintiff, who had been advised on the face of the policy that it was not necessary to enlist the aid of an attorney,

had the right to expect the company to act in the utmost good faith, and while we do not denounce the company's conduct as bad faith, we still cannot escape the fact that, under the circumstances, it was almost an overreaching. The plaintiff had stated that his disability was total and had failed to reply in the affirmative to the question whether this was to be a final and complete settlement. Why should we then approve and encourage the conduct of the other party in failing to cause the clarification which the situation demanded? The defendant had a local agent who could have "liquidated" the amount due in a very few minutes; the defendant was familiar with such matters, the plaintiff was not. Usually, persons availing themselves of insurance are "inexperienced laymen, and not familiar with the ins and outs, twists and turns, connected with the supposed intricacies of insurance." Camden Fire Ins. Ass'n v. Kouri, 171 Okla. 264, 42 P. (2d) 844; Hartford Fire Ins. Co. v. Sullivan, 74 Okla. 241, 179 P. 24. Were we to avoid this just obligation on the ground here urged by the defendant, although there is some merit thereto, we would feel somewhat guilty of looking more to the form than the substance. We are not able to say, therefore, that the trial court erred in concluding that the amount due was neither in dispute nor of such an unliquidated character as to bring it within the rule of the Kubatzky Case, supra. In short, one may not, by his own neglect or willfulness, prevent the quality of certainty as to amount from attaching to a demand which is easily ascertainable, and then base an argument of accord and satisfaction on the premise that the amount due was unascertained or unliquidated.

Payment of part of a debt which is liquidated and due will operate as a satisfaction of the whole only if made on some new consideration. Sherman v. Pacific Coast Pipe Co., 60 Okla. 103, 159 P. 333, L. R. A. 1917A, 716. There was no new consideration here.

The fact that when the claim was made and the check forwarded it was uncertain just how long the disability would continue does not alter the case, for in Commercial Union Assur. Co., Ltd., of London, England, v. Creek Cotton Oil Co., 96 Okla. 189, 221 P. 499, it was held that where a demand may be separated, a portion of which is liquidated and a portion unliquidated. a payment and acceptance and discharge of the liquidated amount is not a satisfaction of the unliquidated claim, unless it be made on some new

consideration, and that such payment operates·only in discharge of the amount paid, and a creditor may maintain an action for the unliquidated amount when it becomes due.

Defendant next argues that plaintiff is precluded from recovery by reason of the principle of estoppel. No claim was made by plaintiff for further payments, after receipt of the check, for about a year, when plaintiff's wife took the matter up with defendant's agent, who wrote defendant and was informed that the company considered its liability ended and would not furnish blanks for further proofs of loss. Six months later this suit was filed.

All of that part of defendant's argument concerning plaintiff's retention of the check, in so far as it deals with this proposition, has been discussed above. The remainder of the argument is that plaintiff's prolonged silence misled the company into the belief that he had recovered, under which assumption the company failed to examine him from time to time. Whether the company was thus misled to its detriment was largely a question of fact for the trial court. No evidence of prejudice was offered by defendant and no authority has been cited that such lapse of time constitutes detriment or prejudice per se. The policy required but one notice of injury and one claim. The reasonable inference from the record is that defendant would have disclaimed liability as fully, two months after the check was given plaintiff, as it did a year later. And that inference is further strengthened by the present contention of defendant that it at all times considered the matter closed and that liability had ended.

Defendant's third proposition is that "the evidence fails to show that plaintiff was totally disabled within the meaning of the policy during the period alleged."

Let us first consider what interpretation the courts place upon the total disability provisions of such policies. We must remember that the phrase does not mean total physical disability, but a disability to engage in the important and necessary functions of the trade or profession described in the application and policy, without the performance of which functions the insured could not carry on the trade or profession at all. As stated in Ozark Mutual Life Ass'n v. Winchester, 116 Okla. 116, 243 P. 735:

" 'Total disability,' under the provisions of an accident insurance policy, does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It exists although the insured may be able to perform a few occasional trivial acts relating thereto, if he is not able to do any substantial portion of the work connected with his occupation."

In U. S. Fidelity & Guaranty Co. v. McCarthy, 50 Fed. (2d) 2, the court said:

"Such accident policy provisions have been before the courts time out of mind. It has always been obvious that an absurdly literal construction could be put upon such words as 'any and every duty pertaining to my occupation' which would reduce the coverage for total disability to the states of coma or absolute mental and physical helplessness. But the fact that money is paid and accepted for accident insurance under these policies compels attributing good faith to the parties and a construction of the words used in the policy conformable to an honest intention to indemnify against total inability to practically carry on the occupation specified."

The evidence amply sustains the court's finding that during the period in question the plaintiff was totally disabled to perform his duties as a supervising architect. Two physicians, both of whom were familiar with plaintiff's duties, so testified, as did the plaintiff himself and one lay witness.

Our discussion of defendant's first proposition has rendered it unnecessary to discuss its next proposition at length, which is that "to authorize recovery for total disability, such disability had to be continuous."

This contention overlooks the evidence. There was no partial disability,—it was total from the beginning, and also continuous. There was no break in the continuity thereof, and hence it is unnecessary to consider this proposition further.

The defendant also argues that the court erred in admitting evidence to contradict and vary the terms of the written contract of settlement. But we have held that there was no contract of settlement. It is urged, too, that certain conclusions of the physicians and the plaintiff should not have been admitted in evidence. While the court was somewhat liberal in this respect, we cannot say, after reading the entire record, that defendant was prejudiced thereby. The case was tried without a jury and there was an abundance of strongly convincing evidence in support of plaintiff's case without the testimony which is discussed by defendant.

On the whole, it appears to us that defendant has had a fair trial and that the judgment coincides with justice. Credit was

allowed defendant for the amount previously paid. The judgment is affirmed.

McNEILL, C. J., and RILEY, BUSBY, and GIBSON, JJ., concur.