[L. A. No. 22492. In Bank. Oct. 21, 1952.]

GRAYHILL DRILLING COMPANY (a Corporation), Appellant, v. THE SUPERIOR OIL COMPANY (a Corporation), Respondent.

Lee Combs and John Barry for Appellant.

Hanna & Morton, Harold C. Morton, Edward A. Penprase, B. W. Burkhead and Max K. Jamison for Respondent.

TRAYNOR, J.—Plaintiff appeals from a judgment of non-suit entered in its action to recover the balance alleged due from defendant for the drilling of an oil well. The evidence, stated most favorably to plaintiff, is as follows: Plaintiff entered into a written contract with defendant to drill an oil well in Oklahoma. The contract was negotiated with defendant's agents Smith and Kunau and sent to California, where it was signed by defendant's vice-president Cody. It was then returned to Oklahoma, where it was executed by plaintiff. It provided that the well should be drilled to the Gibson sand, which was expected to be encountered at or below 6,500 feet. Plaintiff was to receive $5.25 per foot for the hole drilled up to 6,500 feet in depth, and $6.00 per foot thereafter, plus certain amounts for standby time. Drilling proceeded until a depth of somewhat over 4,000 feet was reached, at which depth a steep dip in the geological formation was encountered, and drilling became much more expensive. Plaintiff's vice-president and general manager Frederickson then informed defendant's Oklahoma agents that plaintiff would be unable to continue with the drilling unless more favorable terms could be agreed upon to compensate it for the unforeseen expenses and difficulties. Kunau, defendant's Oklahoma drilling and production superintendent, orally agreed to a modification of the contract whereby plaintiff should be paid at the contract rate of $5.25 per foot for the hole drilled up to that time, and on a cost plus basis thereafter. Drilling continued until a depth of 7,254 feet was reached, at which time the well was abandoned as a dry hole. Plaintiff then submitted three statements to defendant. One was for $96,872.63, described as the actual cost of the well; the second was for $100,121.42, based upon "footage contract to 4000', actual cost from 4000' to 7254'''; and the third was for $47,697.46, the amount that would have been earned under the terms of the original written contract. Defendant sent plaintiff a check for the latter amount, which was accepted and cashed after defendant's agent Smith as-

sured Frederickson that it was not intended as a final settlement. Thereafter further negotiations took place between Frederickson, acting for plaintiff, and various officers and agents of defendant. These negotiations terminated when defendant's vice-president Cody met Frederickson in Oklahoma and offered him $23,000 in final settlement of their account. Frederickson said he would accept the $23,000, but not in final settlement. Defendant then forwarded its check for $23,000 together with a letter stating, "We are enclosing check No. 5305 in the amount of $23,000.00 in full and final settlement of balance of all claims and costs for drilling Craig No. 1 well in Garvin County, Oklahoma. This check is being sent in accordance with request of Mr. J. C. Cody." The voucher attached to the check bore the notation that it was "in full and final settlement of balance of all claims and costs for drilling Craig No. 1. . . ." Plaintiff cashed the check and later instituted this action for the balance it claims is due under the terms of the oral modification of the written contract. At the close of plaintiff's case defendant successfully moved for a nonsuit on the grounds that there was no proof that its Oklahoma agents had authority to modify the written contract, that the oral modification was invalid for lack of consideration and because it was not in writing, and that the evidence established an accord and satisfaction as a matter of law.

The defense of accord and satisfaction was recently considered in *Potter* v. *Pacific Coast Lbr. Co.,* 37 Cal.2d 592 [234 P.2d 16], in a case factually similar to the present one. This court said, "The great weight of authority undoubtedly supports the rule that where a claim is disputed or unliquidated and the tender of a check or draft in settlement thereof is of such character as to give the creditor notice that it must be accepted 'in full discharge of his claim' or not at all, the retention and use of such check or draft constitute an accord and satisfaction (1 C.J.S. § 34, p. 528) ; and it is immaterial that the 'creditor protests against accepting the tender in full payment' (1 Am.Jur. § 26, p. 228), for in such case 'the law permits but two alternatives, either reject or accept in accordance with the condition' (Williston on Contracts, rev. ed., vol. VI, § 1856, p. 5220 . . .). Of course, for the principle of accord and satisfaction to apply in disposition of an unliquidated claim, there must be a 'bona fide dispute' between the parties (*Stub* v. *Belmont,* 20 Cal.2d 208, 218 [124 P.2d 826]), but 'it matters not that there was no solid foun-

dation for the dispute' as the test is whether 'the dispute was honest or fraudulent' (*B. & W. Engineering Co.* v. *Beam,* 23 Cal.App. 164, 171 [137 P. 624] ▪ ▪ Also, the debtor must make it clear that acceptance of what he tenders is subject to the condition that it shall be in full satisfaction. (Citations.)" (37 Cal.2d at 597.)

 In the present case the written contract and the oral modification thereof were made and to be performed in Oklahoma, and the acts relied upon to establish an accord and satisfaction took place in that state. Accordingly, it is the ·substantive law of Oklahoma rather than that of California that must be considered. (*Mercantile Acceptance Co.* v. *Frank,* 203 Cal. 483, 485 [265 P. 190, 57 A.L.R. 696]; see Restatement, Conflict of Laws, §§ 332, 373.) Although there is language in some of the Oklahoma cases that indicates that an accord and satisfaction may be defeated if the creditor indicates that he does not intend to accept a check in full payment (see e.g., *Deming Inv. Co.* v. *McLaughlin,* 30 Okla. 20 [118 P. 380, 381]; *Gentry* v. *Fife,* 56 Okla. 1 [155 P. 246, 247-248]), it appears that when all of the conditions mentioned in the Potter case are satisfied, the Oklahoma cases hold that an accord and satisfaction has been established whether or not the creditor protests that he is not taking the check in full payment of his claim. (*Davis* v. *Davis,* 103 Okla. 83 [229 P. 479, 483]; *Kubatzky* v. *Pittsburg Plate Glass Co.,* 119 Okla. 236 [249 P. 412, 415]; see *Metropolitan Life Ins. Co.* v. *Richter,* 173 Okla. 489 [49 P.2d 94, 96]; *Commercial Union Assur. Co.* v. *Creek Cotton Oil Co.,* 96 Okla. 189 [221 P. 499, 502]; *Sanditen* v. *Allied Refining Co.,* 84 Okla. 47 [202 P. 316, 317].) Accordingly in the present case, since the check was tendered on the clearly expressed condition that it was in full settlement of plaintiff's disputed claim, and plaintiff accepted and cashed it, it is immaterial that Frederickson stated at the time that he was unwilling to accept it in full payment.

 Plaintiff contends, however, that there was evidence from which it could be inferred that defendant was not acting in good faith in disputing its claim. It relies on the following facts: Defendant did not question the authority of its Oklahoma agent to make the modification agreement until the time of trial. Only once during the negotiations was any question raised as to whether in fact the oral agreement had been made. At no time was any complaint made of the accuracy of the cost figures plaintiff submitted as the basis for addi-

tional compensation under the terms of the oral modification. Defendant's vice-president offered no explanation of how he arrived at the compromise figure of $23,000 other than to state that he thought it was fair.

If there was no dispute as to the validity of the oral modification agreement, it may be assumed that defendant's failure to question the accuracy of plaintiff's cost figures and its insistence on settling for a fraction of the amount claimed, would provide some evidence that the dispute over the amount due was not in good faith. (See *Berger* v. *Lane,* 190 Cal. 443, 448 [213 P. 45].) Also, defendant's failure to question the authority of its Oklahoma agent to execute a modification of the contract until the time of the trial, and its failure, except in one instance during the course of the negotiations, to question whether the oral modification was in fact made, may provide some evidence that it did not seriously dispute either of these issues.

Even if it is assumed, however, that there was no dispute over these factual questions, a serious legal question remained as to whether or not the oral modification was valid. After the well was completed, defendant was confronted with a claim based upon an oral modification of its written contract whereby the economic risk of drilling the well had been shifted from plaintiff to defendant. The result of this shift was approximately to double the cost of the well that defendant had agreed to pay. Plaintiff had obtained the modification by pointing out to defendant's agents that it would be forced to breach its contract if relief were not granted. Under these circumstances defendant was in a position seriously to contend that the oral modification was invalid because of lack of consideration and because it was not in writing (see Okla.Stats.Ann., tit. 15, § 237), and it could reasonably resist the payment of any amount not due under the terms of the written contract. It is unnecessary to decide whether the trial court erred in sustaining defendant's contention that the oral modification was invalid. In view of the doubtfulness of defendant's owing plaintiff anything under that modification, its insistence on settling, if at all, for approximately 40 per cent of plaintiff's claim, provides no evidence that its dispute was not in good faith.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.