[Civ. No. 18927. First Dist., Div. One. Jan. 23, 1961.]

GEORGE DIETL, Respondent, v. FRANCIS HEISLER et al., Appellants.

Francis Heisler, in pro. per., Charles A. Stewart and Patricia Lane for Appellants.

David H. Gill for Respondent.

TOBRINER, J.—Appellants contend that the judgment for respondent rendered upon jury trial cannot stand because respondent's own testimony established an accord and satisfaction as a matter of law and because the court and opposing counsel committed many procedural errors during a long trial. We analyze each of appellants' points *infra,* but find no merit in them.

Appellants engaged respondent on a cost plus fixed fee oral contract to remodel their home. Appellants claim in their opening brief that the parties agreed "[o]n a maximum estimate of between nine and twelve thousand dollars," but respondent denied such an arrangement. Appellants paid several installments during the course of the work, but three months after the termination of the work respondent presented an additional bill for $16,452.05. When appellants refused to pay respondent brought suit.

Respondent submitted evidence regarding the cost and extent of materials, labor, and time consumed on the job to support his claim for the additional amounts. Claiming overcharges, poor workmanship, inefficiency, and delay by respondent and his subcontractors, appellants contested respondent's alleged costs.

As an additional defense, appellants relied on an alleged accord and satisfaction between the parties. Appellants claimed that they had sent respondent a letter and a check for $3,000, telling him to "pay all of the bills that are or may be outstanding, pay to yourself the fixed fee of $750, and return the balance to me." Denying that he had received any such letter, but admitting a telephone conversation to the same effect, respondent disputed the consummation of an accord and satisfaction.

The jury returned a verdict for respondent in the amount of $10,949.28 and for appellants in the amount of $1,000, and the court rendered judgment accordingly. On appeal appellants reassert an accord and satisfaction. They likewise challenge both certain rulings of the trial court as to the admission and treatment of evidence as well as certain of its instructions.

The issues, which we discuss separately hereinafter, involve (1) the alleged accord and satisfaction, (2) the instruction on accord and satisfaction, (3) the instruction regarding changes in respondent's deposition, other instructions and conduct of court and counsel during the trial, (4) the instruction on weighing conflicting testimony of expert witnesses, (5) the court's treatment of the deposition, (6) the admission of the subcontractors' invoices, (7) the effect of the conduct of the court and respondent's counsel upon the rights of appellants to damages on the cross-complaint, (8) the proper measure of damages upon retrial.

1. *The alleged accord and satisfaction.*

Appellants affirm, and respondent negates, the proposition that respondent's own testimony established an accord and satisfaction as a matter of law, and that, therefore, the trial court erroneously denied appellants' motion for a directed verdict.

Sections 1521 and 1523 of the Civil Code define accord and satisfaction, respectively, as follows: "An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled." "Acceptance, by the creditor, of the consideration of an accord extinguishes the obligation, and is called satisfaction."

These sections, enacted in 1872, have been cited and interpreted in countless cases since then. ■ Thus in *Lapp-Gifford Co.* v. *Muscoy Water Co.* (1913), 166 Cal. 25 [134 P. 989], the Supreme Court said: "The great weight of authority in American courts undoubtedly supports the rule that where

the amount due is in dispute, and a check for an amount less than that claimed is sent to the creditor with a statement that it is sent in full satisfaction of the claim, and the tender is accompanied by such acts or declarations as amount to a condition that if the check is accepted at all it is accepted in full satisfaction of the disputed claim, and the creditor so understands, its acceptance by the creditor constitutes an accord and satisfaction, even though the creditor states at the time that the amount tendered is not accepted in full satisfaction. (Wald's Pollock on Contracts, 3d ed., p. 839.) Whether there was a dispute concerning the amount due and whether the tender was on condition that acceptance would be in full satisfaction, are primarily questions of fact for the trial court.'' (P. 27.) Indeed, the parties do not dispute the law regarding the elements of accord and satisfaction; they disagree only as to the presence of these elements in this case.

 In determining whether an accord and satisfaction arose as a matter of law we cannot rely upon the receipt of the letter, which fact is disputed; we must look to the undisputed testimony of respondent as to a telephone conversation between the parties. Appellants contend that when respondent received the $3,000 check, the amount appellants owed him remained unliquidated. Hence the statement, ''pay all of the bills that are or may be outstanding, pay to yourself the fixed fee of $750, and return the balance to me'' can ''only be reasonably construed to be a condition that such money was to be in full satisfaction of any claims of Dietl.'' According to appellants, Dietl's retort to the direction to pay the bills, etc., ''I said it was preposterous because he knew the condition and the amount of the work to do plus the state of the job, that it just was simply the most preposterous statement I ever heard of,'' indicates that Dietl ''understood the exact terms upon which . . . Heisler was offering the $3,000.00, to wit, to be in full settlement of all claims.''

Appellants must establish the extreme position that as a matter of law the trial court was bound to conclude that the parties had reached an accord and satisfaction. These potent questions of fact intrude upon such a rigid ruling: (1) Since Heisler did not dispute the amount due, there is doubt as to the existence of a bona fide controversy as to that figure; indeed, when Dietl said that in view of the amount due for work done, or about to be done, the $3,000 ''was preposterous,'' Heisler did not dispute this statement; (2) Heisler did not specify that the check could be accepted only upon condition

that it be deemed satisfaction in full; (3) the record does not show that Dietl accepted the check with knowledge of any such condition, and this factor becomes especially pertinent because the work was not yet completed; (4) Heisler's instructions as to the payment of the bills and the disposition of the balance of the $3,000 by Dietl do not fulfill as a matter of law the postulates of an accord, which occurs, in the words of Corbin, "Where the amount due is in dispute, and the debtor sends cash or check for less than the amount claimed, clearly expressing his intention that it is sent as a settlement in full, and not on account or in part payment" (6 Corbin on Contracts, § 1279, p. 97); Heisler's words are susceptible of interpretation as a payment "on account" as well as a "settlement in full."

The cases cited by appellants do not support their position. In *Grayhill Drilling Co.* v. *Superior Oil Co.* (1952), 39 Cal.2d 751 [249 P.2d 21], a case affirming a finding of an accord and satisfaction as a matter of law, the debtor sent the creditor a check for $23,000 together with a letter stating, " 'We are enclosing check No. 5305 in the amount of $23,000.00 in full and final settlement of balance of all claims and costs for drilling. . . .' " (P. 753.) The creditor cashed the check. The Supreme Court held that the unequivocal terms of the letter justified the court's nonsuit of the creditor.

*Edgar* v. *Hitch* (1956), 46 Cal.2d 309 [294 P.2d 3], involved an appeal from a judgment in favor of the creditor for an unpaid balance. The debtor appealed, claiming the evidence conclusively established an accord and satisfaction. The appellate court reversed because the trial court had made no finding on the validity of his defense of accord and satisfaction, and not because the facts established the defense as a matter of law.

In *Creighton* v. *Gregory* (1904), 142 Cal. 34 [75 P. 569], the trial court found an accord and satisfaction on the facts and the appellate court affirmed. In that case the debtor told the creditor he would settle for a lesser amount than claimed by the creditor; he mailed a statement stamped "Paid . . . ," together with a check to the creditor, but neglected to sign the check. The creditor returned to the debtor's office with the check; the debtor then signed the check and handed it to the creditor who later cashed it.

Certainly the circumstances in the Grayhill Drilling Co. case, involving the words "in full and final settlement," as well as the conduct of the parties in the Edgar and Creighton

cases, fundamentally differ from the instant situation. We conclude that the court properly submitted the issue to the jury, here, in view of the words and acts of the parties.

2. *The instruction on accord and satisfaction.*

 Appellants challenge the court's instruction on this issue because it "amounts to stating that the law requires clear and convincing evidence of an accord and satisfaction, thus placing such a defense in a class with charges of fraud. . . ." They also contend that a further instruction should have been given on the subject matter.

The questioned instruction reads as follows: "In order for the defendants to assert what is known in law as an accord and satisfaction in defense to an action for money the defendants have the burden of showing by a preponderance of the evidence that the $3,000 check was tendered by defendants and received by plaintiff *along with a statement sufficiently explicit and unequivocal in its terms as to impose* the condition that it could be accepted only as payment in full and not otherwise." (Emphasis added.) Appellants object to the emphasized portion of the instruction because it required that the condition as to acceptance of the tendered amount as payment be stated in terms that objectively and externally so provided rather than that the parties themselves may have so understood them.

The decisions, however, employ exactly such language, and we do not believe that the instruction was erroneous, or, in any event, could have misled the jury to the prejudice of appellants. Thus in *Messer* v. *Tait's Inc.* (1932), 121 Cal. App. 698 [9 P.2d 536], the appellate court affirmed a trial court judgment for the creditor, saying that no accord and satisfaction could be found as a matter of law. The debtor sent the creditor a payment accompanied by a letter reading in part: " 'We are enclosing checks as follows: . . . [Then followed itemized list of five checks for business done.] According to our books the above balances all our accounts, including Los Angeles.' " (P. 700.) The court stated: "In other words, it must unequivocally appear that the check is offered only upon condition that it be accepted, if accepted at all, as full satisfaction of the disputed claim." (P. 701.) The court concluded that the trial court's finding that the parties did not reach an accord and satisfaction could not be reversed as a matter of law.

Likewise in *Biaggi* v. *Sawyer* (1946), 75 Cal.App.2d 105 [170 P.2d 676], the appellate court held that a trial court

judgment for the creditor could not be overturned as a matter of law in reliance on a letter which was "not clear and unequivocal." (P. 113.) See also *Potter* v. *Pacific Coast Lumber Co.* (1951), 37 Cal.2d 592 [234 P.2d 16], wherein the court said "the debtor must make it clear that acceptance . . . is subject to the condition. . . ." (P. 597.)

Appellants' dichotomy between the alleged "subjective" and "objective" criterion is too thin a reed upon which to rest prejudicial error in this instruction. It is true, as appellants argue, that the courts in the above opinions used the term "unequivocal" in determining whether the parties reached an accord and satisfaction as a matter of law rather than in passing upon the propriety of instructions. But the substance of the instant instruction calls for the finding that the "statement" be explicit enough that it "be accepted only as payment in full"; that the acceptance be upon the *understanding* or knowledge that the lesser amount would constitute full payment; that the creditor take such amount with the awareness of the consequences. The instruction did not misguide the jury.

 The court refused to give the following instruction, requested by appellants: "The reason for this rule is that the acceptance of a sum tendered in full satisfaction with a secret intention not to discharge the debt is a tortious, or wrongful act, and the law does not permit a man to say that he intended to do a wrongful act for the purpose of changing the legal affect of his act. Nor does any disparity between the amount so paid and the amount which would be owing had the debt been liquidated at the time the payment been made [*sic*] change this rule for the law leaves persons to the bargains they have actually made."

Appellants submit no decisions which would uphold such an instruction, but claim that, because respondent protested that the amount sent was insufficient, the court was required to amplify the previously rendered instructions. We believe, however, that the court properly omitted appellants' proposed instruction because the bulk of it actually had been included in the other instructions. The proposed explanation as to the "reason" a creditor cannot harbor a "secret intention" does not assist in applying the rules set out in the given instructions. A court properly may "refuse instructions which are repetitious in substance and would serve only to emphasize unduly a party's theory of the case and which so far as they contain correct statements of the law are ade-

quately covered by the instructions given." (*Kraft* v. *Nemeth* (1952), 115 Cal.App.2d 50, 54 [251 P.2d 355].)

We conclude that the court properly instructed on accord and satisfaction and did not deprive appellants of consideration on their theory of the case.

3. *The instruction regarding changes in respondent's deposition, other instructions and conduct of court and counsel during the trial.*

Appellants allege error on the part of the trial judge in four specific instances. (a) During appellants' cross-examination of respondent concerning changes in his deposition the court instructed the jury that the law afforded a deponent the right to make such changes. (b) During the cross-examination of one of the subcontractors the court of its own motion instructed the witness regarding the attorney-client privilege. (c) The court during the trial erroneously instructed the jury on the measure of damages for delay. (d) The court and opposing counsel were guilty of misconduct at various points throughout the trial.

These contentions will be discussed in the order set forth above.

(a) *Instruction regarding changes in respondent's deposition.*

Appellants insist that although the instruction concerning changes in respondent's deposition correctly stated the applicable law, the mere rendition of it during appellants' cross-examination of respondent, without a statement as to the rules governing admissions, destroyed the effect of respondent's admissions in the original unchanged deposition. The alleged objectionable sequence occurred when, in response to respondent's request "to advise the Jury that when a deposition is transcribed it shall be submitted to the witness for examination," the court replied, ". . . the one who gives a deposition, has a right to make changes or corrections in his deposition before he has signed and sworn to it; the nature and the effect of these changes is a question for the Jury to consider along with all other matters." Appellants complain that the court not only nipped in the bud their point that respondent's changes constituted admissions but also foreclosed their attempt to obtain "an instruction as to the effect of the prior statements of a party who changes his testimony."

Neither complaint will stand. The first, as to the instruction, fails in the face of the court's remark that "the nature

and the effect of these changes is a question for the Jury'' and in view of the complete and balanced instructions of the court prior to submission of the cause. The second, as to the desired further instruction, does not emerge from the obscurity of appellants in urging it. The cryptic words of Mr. Heisler (''Is there not a proper order for the Court to inform the Jury that under the law the witness who makes changes———'') do not describe a sought instruction, and if appellants contend that the court stayed Mr. Heisler as to further elaboration of the point, appellants' counsel remained silent as to the matter.

*Shippy* v. *Peninsula Rapid Transit Co.* (1925), 197 Cal. 290 [240 P. 785], and *Martin* v. *Los Angeles Turf Club, Inc.* (1940), 39 Cal.App.2d 338 [103 P.2d 188], which appellants cite to demonstrate an alleged breach of procedure, do not remotely bear upon the present subject. Shippy involved a novel situation: Prior to counsel's argument and the rendition of instructions, the court requested the jury to indicate how many jurors thought that they could decide the case without such argument and instructions. The appellate court found such procedure ''amounted in substance to a requirement of the jurors that they evince a fixed state of mind with respect to both the facts and law of the case which they were not entitled to hold or to express at that stage in the proceedings.'' (P. 295.) Certainly in the instant case the court's remarks did not require the jury momentarily to evaluate the effect of respondent's changes in his deposition. Nor is the situation in Martin any more analogous to the instant one. There the court instructed on the law after the opening statements and before the submission of any evidence; both parties specifically waived any objections and consented to such procedure.

Finally, appellants contend that the court's statements led to an overemphasis of respondent's right to change his deposition, inducing the jury's neglect of the effect of admissions. Appellants' citation of *Taha* v. *Finegold* (1947), 81 Cal.App. 2d 536 [184 P.2d 533], and *Powell* v. *Bartmess* (1956), 139 Cal.App.2d 394 [294 P.2d 150], do not substantiate the point. In Taha, the court gave 16 instructions concerning the duties of the plaintiff and only three concerning the corresponding duties of the defendant; the result was ''an unnecessary and obvious emphasis'' on the duties of the plaintiff. (P. 543.) In Powell, in considering instructions *not* given, the court condemned instructions stressing specific items of evidence which would have distorted the picture. Neither the cases nor the record support appellants' position.

(b) *Attorney-client privilege.*

■ When appellants asked a witness as to a communication between the attorney and the witness, the court instructed the witness that any such "communications . . . are privileged." Appellants now object to the court's remarks. The objection is abortive in view of appellants' withdrawal of the question.

(c) *Measure of damages.*

■ In regard to damages appellants claim "the court erroneously instructed during the course of the trial as to the measure of damages for delay" but the record discloses that the alleged instruction composed no more than a comment and that in any event upon the submission of the cause the court gave proper instructions on damages.

(d) *General misconduct.*

■ Appellants lodge a charge of misconduct against opposing counsel: "objecting, time and time again to the same evidence after his original objection had been overruled," and his "unwarranted comments . . . particularly in referring to the defendant homeowners, husband and wife, as 'lawyer Heisler and Dr. Heisler' and the house as the 'Heisler mansion.' . . ." Throughout the 16-day trial, composing over 1,700 pages of record, both parties and their attorneys bitterly assailed each other. The misconduct did not fall exclusively upon one or the other side of the counsel table: it spread across it. Likewise, appellants' contention that the trial judge "unduly restricted" appellants' rights collapses in the face of the court's noteworthy restraint as to both parties and its extraordinary consideration for all concerned in this extended trial.

4. *The instruction on weighing conflicting testimony of expert witnesses.*

■ Contending that the record does "not justify the claim of respondent" that the testimony of the experts "was conflicting," appellants assert that the instruction on "conflicting experts' testimony" should not have been given. Whether or not "experts," other than respondent's Mr. Bain, testified at the trial and thereby established the grounds for the instruction, appellants can hardly complain of the instruction. Appellants proposed it. If it were error, appellants invited it. (*Pomerantz* v. *Bryan Motors, Inc.* (1949), 92 Cal. App.2d 114, 120 [206 P.2d 440] ; 2 Witkin, California Procedure, Trial, § 70, p. 1800.)

### 5. *The court's treatment of the deposition.*

 As we have set out *supra,* respondent before the filing of his deposition changed portions of it. Apparently appellants claim prejudicial error in the conduct of the court in "first permitting into evidence then denying the introduction into evidence of the corrected deposition, and vice versa again. . . ." According to appellants this procedure "completely obscured the weight to be given the uncorrected statements of respondent contractor as admissions."

Since appellants themselves failed to read into evidence that portion of the deposition which the court ruled to be admissible, they can hardly complain of its absence. In any event, the major portion of the content of the statements in the deposition had come to the attention of the jury during cross-examination of respondent. Appellants' complaint that they were denied the benefit of a continuity in the exposition of the deposition suggests a speculative consideration which is entirely insubstantial in view of their failure to read the document.

### 6. *The admission of the subcontractors' invoices.*

 The trial court admitted 80 invoices, submitted by the subcontractors to respondent, for the limited purpose of showing "the description of the material installed and the prices paid." Appellants claim error, alleging that the invoices were inadmissible hearsay and that the limiting instruction was ambiguous and uncertain. Appellants stated: "Now, Mr. Heisler and I do not wish to have the Jury put to the tedium of having a sheaf of bills about three inches thick read. We both said in chambers here that we had a right of cross-examination of the people who prepared those things and I think that we are being deprived of that right by Mr. Gill having the witness read them into the record." Subsequently appellants thoroughly cross-examined the four subcontractors whose invoices were admitted. Each of them testified concerning the materials used, the prices of the materials, and the reasonableness of the prices. Nevertheless, appellants contend that the admission of the invoices, containing the same matter to which the witnesses testified, constituted prejudicial error.

Without discussion of the four grounds respondent postulates to prove that the invoices could be admitted under exceptions to the hearsay rule, we believe their admission could not in any event constitute reversible error. The contents of the invoices, and more, came into evidence through the direct testi-

mony of witnesses. The presence or absence of the 80 slips of paper could have had no appreciable effect upon the jury.

7. *The effect of the conduct of the court and respondent's counsel upon the rights of appellants to damages on the cross-complaint.*

Appellants insist that the behavior of respondent's counsel and the trial judge rendered the amount of the verdict on their cross-complaint considerably less than it should have been. Appellants, however, neglect to specify what misconduct occurred. Under issue (c) *supra,* we have discussed appellants' claims as to error because of the court's comments during the trial as to damages. The only other possible error, occurring after appellants opened the case on the cross-complaint, involved respondent's unsuccessful attempt to qualify an expert. The witness improperly interjected his estimate of the cost of the job without qualifying as an expert, but since the court struck the testimony, no reversible error occurred. We have found no other instances which could serve as a basis of alleged error.

8. *The proper measure of damages upon retrial.*

Appellants' contentions as to the proper measure of damages in the event of retrial are entirely moot in the absence of an order calling for such retrial.

We affirm the judgment and dismiss the appeal from the order denying the new trial.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied February 20, 1961, and appellants' petition for a hearing by the Supreme Court was denied March 22, 1961.