EQUITABLE LIFE ASSURANCE SOC. OF U. S. v. DAVIS.

No. 30052. May 11, 1943.

*137 P. 2d 548.*

Snyder & Lybrand, of Oklahoma City, for plaintiff in error.

Walter Mathews, of Cushing, for defendant in error.

DAVISON, J. In this action recovery of $2,000 on a policy of group life insurance was sought and obtained in the district court of Payne county. The action was instituted on March 24, 1939, by Blanche Davis, as plaintiff, against the Equitable Life Assurance Society of the United States, as defendant. The case was tried to a jury.

The defendant has appealed. The order of appearance is thus reversed in this court. In this opinion we shall refer to the parties by their trial court designation.

The insurance policy involved in this action was issued by the defendant company to the Cushing Refining & Gasoline Company on the life of its employees. The plaintiff's husband, Grover D. Davis, now deceased, as one of the employees received an individual certificate evidencing his protection thereunder. This provided, in substance, that it, together with the policy and employer's application, should constitute the contract. The plaintiff herein was the named beneficiary of the insurance. The contract provided in part:

" . . . if due proof shall be submitted to the Society at its Home Office within one year after the death of an employee:

"1. That such Employee at the date of which the employer shall have ceased to make premium payments under said policy with respect to him was totally disabled by bodily injury or disease so as to be prevented from engaging in any occupation for compensation or profit. and

"2. That such total disability continued from said date to such Employee's death, and

"3. That such Employee's death occurred within a period after said date not longer than the time such Employee's insurance under said policy had theretofore been continuously in force and in any event not longer than twelve months after said date, and also occurred while said policy was in full force and effect,

"Then, there shall be paid to such Employee's beneficiary under said policy the amount of insurance in force thereunder on the life of such Employee at said date; . . . "

The employment of the insured by the Cushing Refining & Gasoline Company ceased on May 23, 1938. It was terminated by his discharge because of an altercation with another employee. On the date of his discharge this employer ceased to pay premiums on the insurance carried in his behalf. The premiums were thus paid up to and including May 23, 1938. On December 19, 1938, the insured died. The insured had been employed for more than one year preceding his discharge.

The beneficiary instituted and prosecuted this action on the theory that at and prior to the time the insured ceased to work he was in fact totally disabled, and that the existence of such total disability continuing, as she alleged it did, until the death of the insured, which occurred within less than one year after the policy was in force by virtue of the payment of premiums, operated under the terms of the contract to extend the period covered by the insurance.

In defining what constituted total disability the trial court advised the jury in part that:

". . . . Total disability exists where common prudence and the exercise of ordinary care would require the insured person to desist from performing the duties of his usual occupation."

The defendant insurance company urges that this portion of the instructions given is substantial error. It asserts that the defendant did in fact work and perform substantially all of the duties pertaining to his employment, until the 23rd day of May, the date of his discharge. In substance, it asserts that the fact that he did work was and is conclusive evidence of the non-existence of total disability. The plaintiff, on the other hand, takes the position that total disability may exist even though a person is actually working and doing all or substantially all of the duties pertaining to his employment if in truth and in fact, in the exercise of ordinary care for his own personal safety, he should not be doing such work. The plaintiff thus takes the position that the fact that the insured worked until the date of his discharge (if it should be considered an established fact) is only evidence of the nonexistence of total disability, and that the same can be, and in this case was, overcome by proof to the contrary. In the alternative plaintiff asserts that there is substantial proof in the record tending to establish that for two days preceding the termination of his employment the insured in this case was by reason of his health prevented from performing all or substantially all of the duties of his employment. Before discussing the merits of the positions of the respective parties on the controverted legal question, it is appropriate that we review the proof in connection therewith.

As we have previously noted, the insured's discharge was not attributed by his employer to his health. However, according to the testimony of his wife (plaintiff herein) she observed certain symptoms which indicated that her husband was not in good health for some time prior to his discharge.

Mrs. Davis testified that preceding the discharge of the insured he had on several occasions been temporarily stricken, causing him to fall on the floor; that the last of these incidents preceding his discharge occurred on the 21st day of May, 1938, when he "ate dinner, got up and fell on the floor." He lay there for about 15 minutes. Thereafter, according to the testimony of Mrs. Davis, the insured did not return to work, although his discharge did not occur until two days later. In her cross-examination she qualified this statement slightly. She said in substance that during that time there were periods of two or three hours when she was not with him and she could not say for sure that he did not do any work at all. She also testified in substance that for some time prior to his discharge her husband was

periodically unable to sleep and would sit on the side of the bed at night; that he perspired an unusual amount; that he suffered from pains in his chest, had swollen ankles, and was frequently short of breath.

The testimony of Mrs. Davis as to whether her husband worked during the two days preceding his discharge (or the extent of his work, if he did work without her knowledge) is at variance with other proof appearing in the record.

A short time after he was discharged the insured was examined by Dr. Knowles of Rockaway Beach, Mo., who testified that he found him suffering from a chronic heart ailment, which in his opinion had existed at least 18 months, and which during that time had grown slowly and progressively worse. The doctor determined that at the time of the examination any form of work would be inconsistent with the health of the insured. In fact, the doctor said the man was "hardly able to walk" at the time. The general tenor of the doctor's testimony was that the condition as it existed on the date of the examination was probably not a great deal worse than it had been during the preceding month when he was discharged.

On June 30, 1938, and July 18, 1938, the insured was examined by Dr. Raymond L. Murdoch of Oklahoma City, who stated in his testimony that:

"A. My physical examination revealed that he had an enlarged heart, a cardiac decompensation, edema of his ankles, enlarged liver, hemorrhoids, and fissure of the rectum. Q. Doctor, could you approximate from your examination as to about how long his then condition had existed? A. I would think that it had been there several months, and could have been there considerably longer than that."

And with reference to the probable condition on the date of discharge, the doctor testified:

"Q. What did you observe in his condition on June 30, 1938, that would make it improbable that he did work fully performing the duties of his employment to the satisfaction of his employer for one year prior to May 23, 1938? A. I only have my impressions, as I said before, that he had a severe cardiac condition on June 30th, from which I got the impression it would have been there for several months previously. It is a clinical impression, not observation of fact before the 30th of June, because I didn't see him before the 30th of June. Q. Would you see nothing inconsistent with the fact, if it is a fact, that the man worked without a day off for a year prior to and including May 23, 1938? A. I believe he had some symptoms. Q. I may betray some symptoms of heart trouble, I am working, am I not, and many a man does work with the heart disease you have diagnosed this man as having right up to the day of his death, isn't that a fact? A. Not with the condition he had on June 30th. Q. Well, with the disease he had, I am trying to be very cautious in my use of words in asking this particular question? A. It is just a clinical impression on my part. Q. And you wouldn't say that it was impossible for him to do it? A. Too many things happen to say a thing is impossible. Q. And would you not say it was improbable that he did it? A. Yes; I would say that it was improbable. I would not have expected him to do it from my clinical impression, from seeing him on June 30th."

Dr. Clifford M. Bassett later attended the deceased during the portions of his illness immediately preceding his death. His testimony corroborates and substantially conforms to that of the other doctors above reviewed.

The foregoing evidence, if accepted by the jury (as we must presume it was in support of the verdict), was sufficient to support the view that the plaintiff for some time prior to his discharge was in such a condition of health that he should not have been working, though he may have been in ignorance of the seriousness of his own physical condition. It also supports the view that by reason of the impairment of his health he was actually prevented from doing all or at least the major portion of his work for the last two days immediately preceding the injury. The evidence on this point is disputed.

However, if the instructions of the trial court had been so drafted that controlling importance was to be attributed to this issue of fact and the plaintiff had prevailed, the verdict and judgment would be subject to approval without further consideration. But the instructions were not so drafted.

It is probable that the jury may have accepted the view that the insured actually worked until and including the date of his discharge. Even if the jury so concluded, it was authorized to return a verdict for the plaintiff if it believed that the health of the insured was such that in the exercise of ordinary care he should not have then been working and that by reason of his health he thereafter desisted from work. Since this hypothesis justified recovery and since it constitutes a view which the jury quite probably entertained, the record is not free from substantial error if the view of the law embraced in the instruction is fundamentally erroneous. We must therefore analyze the law from this standpoint.

What constitutes total disability within the meaning of an insurance policy comprehending benefits of one kind or another has been a subject of much litigation, but is now reasonably well settled in this and other jurisdictions.

Total disability has been defined by this court as a "disabilty to engage in the important and necessary functions of the trade or profession described in the application and policy, without the performance of which functions the insured could not carry on the trade or profession at all." Metropolitan Life Ins. Co. v. Richter, 173 Okla. 489, 49 P. 2d 94. It does not mean a state of absolute helplessness nor mean that the insured must be in such a condition that he cannot do any part or portion of the duties pertaining to his trade or occupation, but, on the contrary, may exist although the insured may do some of the acts relating thereto if he is not able to do a substantial portion of the work connected with his occupation. Metropoliton Life Ins. Co. v. Richter, supra; Mid-Continent Life Ins. Co. v.

Bean, 179 Okla. 394, 65 P. 2d 1018; Travelers Insurance Co. v. Blake, 176 Okla. 364, 55 P. 2d 975; Ozark Mut. Life Ass'n v. Winchester, 116 Okla. 116, 243 P. 735.

This view of what constitutes total disability is in accord with the generally prevailing view as indicated by the authorities reviewed in the following annotations: 24 A.L.R. 203; 37 A.L.R. 151; 41 A.L.R. 1376; 51 A.L.R. 1048; 79 A.L.R. 857; and 98 A.L.R. 789. In connection with the last annotation, the annotator observes:

". . . 'Total disability' contemplated by an accident policy, or the disability clause of a life policy, does not mean, as its literal construction would require, a state of absolute helplessness; rather, that the disability contemplated means inability to do all the substantial and material acts necessary to the prosecution of the insured's, or, in many instances, any, business or occupation, in a customary and usual manner."

But how are we to apply this definition to a person who, either in ignorance or without regard to his own limitations, continues to work? Is disability to be determined by what he can properly do, or by what he actually does? Many disabilities, such as heart trouble, exist which do not immediately create a manifest physical incapacity to perform substantially all of the tasks of a given occupation. To illustrate the problem, let us assume that two persons have an identical difficulty. One consults a physician who properly advises him to cease working, which he does. The other either does not seek medical advice or disregards it when obtained and continues to work, even though in doing so he exceeds the limitations prescribed by ordinary prudence. Does the conduct of the latter make his actual disability less than that of the more prudent man? We are of the opinion, and hold, this question must be answered in the negative. Both have the same disability. In Travelers Insurance Co. v. Blake, supra, we said in paragraph 4 of the syllabus:

"It cannot be held as a matter of law that the insured was not totally disabled because during a portion of such time he made a good faith effort to per-

form the duties of his usual employment."

And in the body of the opinion, we concluded:

"Many authorities are cited by counsel for the defendant which seem to support their contention, but the weight of authority follows the rule laid down in the cases cited herein. It cannot be held as a matter of law that the insured was not totally disabled because during a portion of such time he made a good faith effort to perform the duties of his usual employment. The evidence discloses an unusual effort on the part of the insured to perform his labors, although incapacitated from the start, during all of which time common prudence, and the exercise of ordinary care, would have required him to desist from the performance of such duties.

"Our discussion of the question of 'total disability' and the conclusion reached, renders it unnecessary to consider the proposition of 'partial disability', as the latter is absorbed in the former."

The defendant takes the view that much of what we said in Travelers Insurance Co. v. Blake, supra, could have been avoided, and should therefore be considered dictum. It is true that partial as distinguished from total disability might have claimed a greater degree of consideration in that case; however, the mere fact that a case might have been decided on another theory does not render what was said dictum, if what was said bears directly upon the theory upon which the decision proceeded and upon an issue of law treated as decisive. Union Pacific Railroad Co. v. Mason City & Fort Dodge Railroad Co., 199 U. S. 160, 26 S. Ct. 19, 50 L. Ed. 134. Furthermore, we find nothing objectionable in the views expressed upon the point in Travelers Insurance Co. v. Blake, supra. They are in accord with the better reasoned cases from other jurisdictions.

In Temples v. Prudential Ins. Co. of America, 18 Tenn. A. 506, 79 S. W. 2d 608, it is tersely said:

". . . If he works when he is not able to work and when it impairs or endangers his health, and his disability is of such character that ordinary care requires him to desist, then total disability exists, and it is a question for the jury."

Other cases dealing with the question, some of them expressing views slightly at variance with the views herein expressed, are to be found in the annotation mentioned, supra, appearing in 98 A. L. R. 789, at pages 794 and 795.

We shall not attempt a detailed review of the cases appearing therein; however, an analysis of the cases will disclose that in general, insofar as the naked or isolated term "total disability" is concerned, it may and does exist if the insured cannot, consistent with the exercise of ordinary prudence in the preservation of his life or the preservation or recovery of his health, perform substantially all of the tasks essential to his occupation or in some cases any other occupation which he is capable or qualified to enter. See Wright v. Prudential Ins. Co. of America, 27 Cal. A. 2d 195, 80 P. 2d 752.

Our discussion and conclusions thus far have been limited to a determination of the meaning of the term "total disability" but in this case, as in all other cases which we have cited and reviewed, a determination of the meaning of that term does not dispose of the question because of the appearance in the insurance contract of other language qualifying the terms. In this case we are dealing with a contract which provides for benefits in case the insured was "totally disabled by bodily injury or disease *so as to be prevented from engaging in any occupation for compensation or profit.*" (Emphasis ours.)

In many of the cases studied by us in the preparation of this opinion the presence of such language of limitation has been treated as though it were a limitation upon the general meaning of the term "total disability" rather than a qualification of the meaning of that term applicable only to the particular case before the court. Thus language has been used in defining "total disability" which was in reality appropriate for the term as qualified in the policy

before the court, but inappropriate as a general definition of the term when isolated and unqualified.

The qualification "so as to be prevented from engaging in any occupation for compensation or profit" claims its degree of consideration.

It is true, as we pointed out in Metropolitan Life Ins. Co. v. Richter, supra, citing United States Fidelity & Guaranty Co. v. McCarthy (C.C.A.) 50 F. 2d 2, that qualifying words of this character are not always entitled to a literal interpretation. They are subject to a construction consistent with an "honest intention to indemnify against total inability to practically carry on" an occupation. As more fully stated in Cyclopedia of Insurance Law, by Couch, vol. 7, p. 5766, par. 1670:

"Valid provisions in policies of life, health, and accident insurance, conditioning the insurer's liability upon total disability, etc., are, with certain exceptions, so various and conflicting, especially when considered in connection with other provisions in the same policy or contract, that it is difficult to determine whether insurance companies have strenuously endeavored thereby to evade payment if the intricacies of the language will so permit, or whether they have, perhaps with the utmost good faith, overzealously endeavored to protect themselves and their funds. Assuming their good faith, however, the language in many cases is, to say the least, so circumscribed and restricted by qualifying words and phrases that if it were literally construed the indemnity sought by the insured, and believed by him to have been obtained, would be but a false shadow. As a matter of fact, provisions for total disability, etc., in all cases of doubt, should be, and generally are, liberally and fairly construed so as to give the insured the indemnity supposedly contracted for, to the exclusion of any narrow or technical interpretation which would defeat the intention of the parties. . . ."

Total disability under policies with the character of qualification or limitation now before us have frequently been held to require as a prerequisite to claiming the benefits that the insured shall have desisted from work. However,

obviously, the disability may have predated the cessation of work. It is apparent in a group insurance policy such as that now before us, where the premiums are paid by the employer during the period of employment but not thereafter, the premiums are going to, or may, stop at approximately the same time that the employee ceases to work, although the disability as distinguished from the cessation of work may have existed for some time. Such situations are contemplated by the contract and the provisions thereof relating to extended insurance.

The contract now before us is not so worded as to require that the cessation from work must have predated the date of discharge. It says "so as to be prevented," etc. The words "to be" are futuristic in their implication and indicate that the prevention from work contemplated by the policy is a future result of a present condition. The condition of total disability having attached during the period the premiums were paid, the result may, and no doubt frequently does, occur almost simultaneously with the cessation of the payment of premiums. While the result, namely, the cessation of work in a substantial sense, may be essential to a claim for benefits, it is not essential that the cessation of work commence and continue for some appreciable portion of the period of employment.

The fact that the insured worked until the date of his discharge was evidence of his continuing ability to work, but not conclusive evidence. The fact that he was discharged for other causes was some evidence that his cessation of work was not due to disability, but certainly it was not conclusive. In this case this evidence was met by strong proof to the contrary.

Within two weeks after his employment ceased his examining physician said he was hardly able to walk due to a heart disorder which had slowly "crept" upon him. Symptoms of the disorder had been apparent during his employment. In a few months he was dead. The proof of the existence of the

disability was ample, as was the proof that by reason thereof the insured did not work from and after his discharge. Notice Wright v. Prudential Ins. Co. of America, supra.

Insofar as the nature and extent of the disability is concerned, the case at bar is much stronger than the case of Metropolitan Life Ins. Co. v. Brown, 190 Okla. 338, 123 P. 2d 255. The insured in that case could do some work after his discharge, being hampered only by his defective hearing. Here, within a very short time, the insured was not only disabled, he was for all practical purposes almost a helpless invalid. In the cited case we approved recovery. In this case it should likewise be approved.

Upon the foregoing considerations we conclude that the trial court did not err in its definition of what constitutes total disability. Elsewhere in its instructions (in fact, in the immediately preceding instruction) it gave due consideration to the appearance in the policy of the qualifying clause which we herein specially treated. The instructions to the jury on the point were free from substantial error and the verdict is amply supported by the evidence.

The defendant herein also complains of the sufficiency of the proof of disability submitted to it prior to the commencement of this action. The argument under this point reiterates defendant's position that the insured must have ceased work prior to discharge and emphasizes that proof of that fact is an essential prerequisite to recovery. We have examined the proof of disability made and the correspondence in connection therewith, and find it sufficient. We deem it unnecessary to restate in connection with this point that which we have already said upon the subject of ceasing work.

The judgment of the trial court should be and it is affirmed.

CORN, C. J., and RILEY, OSBORN, HURST, and ARNOLD, JJ., concur. GIBSON, V. C. J., and BAYLESS and WELCH, JJ., dissent.

GIBSON, V. C. J. (dissenting). The undisputed facts in this case are that the insured for more than a year immediately prior to the termination of his employment had performed all of the duties of his employment without interruption and in a highly efficient and satisfactory manner, and that such performance continued up to the very hour his employment terminated and his premiums ceased.

The uncontradicted evidence shows that the insured for some time prior to May 23, 1938, and afterward, was subject to the ailments mentioned in plaintiff's petition; that he was discharged on that date, not by reason of any physical disability, but for fighting with a fellow employee, some days prior thereto, contrary to positive rules of his employer.

Other evidence was that the insured had never been noticeably ill on the job; that his illness never interfered with his work. The plaintiff, who is the widow of the deceased insured, testified that he did not work the two days next preceding his discharge; that he was too ill from his heart trouble to work on those days. Her testimony was of no value, however, for later she testified that she did not want to be understood as saying that the insured did not work after May 21st, or the last two days of his employment. That he was fully paid up to and including May 23rd is not disputed.

The medical testimony was produced by plaintiff and consisted of the evidence of Dr. Knowles, who examined insured on June 7, 1938, after insured had driven an automobile from Cushing, Okla., to Rockaway Beach, Mo., on June 4th or 5th; also, the evidence of Dr. Murdoch, who examined insured on June 30 and July 18, 1938; also, that of Dr. Martin, who attended the insured from June 29 to August 16, 1938; and that of Dr. Bassett, who attended the insured from September 13th to December 19th, the date of insured's death. They testified as to insured's condition at the times he was examined by them or was under

their care and what their "clinical impressions" were from such examinations as to his condition prior to May 23, 1938.

These "clinical impressions" were that the insured had been suffering from a heart ailment for some months prior to his discharge, and that at the time of the examinations he was suffering from a progressive disease that would some time reach an acute stage and perhaps eventually take his life.

The evidence was wholly insufficient to warrant submission to the jury of the issue of total disability on any theory.

The majority opinion holds:

" 'Total disability' may and does exist if the insured cannot, consistent with the exercise of ordinary prudence in the preservation of his life or the preservation or recovery of his health, perform substantially all of the tasks essential to his occupation or in some cases any other occupation which he is capable or qualified to enter."

But plaintiff in her brief says that doctrine has no application under the facts of this case. She says, "Thus, since this insured did no work after he quit his job, the so-called 'ought not to work' and 'part or slight work' doctrines have no application. They apply only where the insured does some work after the claimed onset of the alleged total disability." I agree with that statement.

Here we have a man who not only was able to work, but who, in fact, did work effectively and satisfactorily, and, so far as the evidence shows, without pain or inconvenience to himself, up to the very hour of his leaving his employment. Yet, according to the majority opinion, this man was totally disabled and wholly unable to do any work, legally speaking, and became so at some indefinite time in the past before he left his employment but while the insurance was in force.

The insured left his employment on May 23rd. He died the following December 19th, nearly seven months later. It is asserted and not denied that under the policy here considered the insured had the right to convert his group insurance policy into one of several other kinds written by the defendant company, but that insured had neither done so nor attempted so to do. So far as the evidence shows, the deceased never claimed that he was totally disabled prior to his discharge by his employer and no notice of such claim was given to his former employer or the insurance company prior to insured's death.

In cases of this character the law, laid down in the decisions of this and other states, is that where an employee actually works full time, satisfactorily and efficiently, and for full pay, he cannot be said to be totally disabled within the meaning of the insurance contract.

I, therefore, respectfully dissent.