BOUTALL, Judge
(dissenting).
The difference of opinion between the majority of this panel and the dissenter is possibly brought about by a frequent problem in appellate courts, that is, the lack of reasons for judgment or findings of fact in the trial court. In close factual cases, is becomes difficult to precisely assess the effect of the evidence on the trial judge’s conclusions, when he does not set down these conclusions as guide posts.
In this case there are no clear conflicts in the evidence presented and thus it is not a case where a trial judge is faced with witnesses who testify in contradiction of each other, and the judge must choose which is worthy of belief. It is rather a case wherein the evidence must be examined, considered and weighed to arrive at a conclusion of disability or non-disability under the provisions of an insurance policy.
In addition to the cases cited in the majority opinion, we have been referred to the following cases which are asserted to be factually similar to the case at bar. See Benoit v. Travelers Insurance Company, 251 So.2d 87 (La.App. 3rd Cir., 1971); Russell v. Prudential Insurance Company v. America, 437 F.2d 602 (5th Cir., 1971); and Equitable Life Assurance Society of United States v. Davis, 192 Okl. 429, 137 P.2d 548 (1943). An examination of those cases convinces me the rule is that in each case the determination of disability must be made upon the facts and evidence presented. While the trial judge assigned no written reasons for judgment, it is apparent that he had to find that there was no disability in existence at the time of the discharge, and I am unable to discover such manifest error as to warrant reversal. In fact, it appears that the evidence preponderates in favor of the defendant’s position in this case.
The only medical evidence in this case is that given by Dr. Meyer Kaplan, who treated Mr. Miller during the period he was in New Orleans, that is, from November 4, 1966, to July 12, 1968. Dr. Kaplan was also the company physician for Louisiana and Southern Life Insurance Company, Miller’s employer, and occupied an office just a few doors away from Miller. Although the doctor’s reports show few office visits, he saw Miller frequently on an informal basis. A fair summation of Mr. Miller’s condition can be obtained from Dr. Kaplan’s answer to a question directed to him:
“He had severe and bilateral and diffuse chronic pulmonary insufficiency due to a pulmonary fibrosis in both lungs which he had had for some years, it had been gradually progressive in its symptomatology, his symptoms had gone back at least five or six years if not a little bit longer and even at the time that he came to me he was almost a respiratory semi-invalid who was working at a specific job at his maximum, he continued to work at my recommendation from begining to end I really feel. I’ll have to amplify to a great deal about his psychic makeup also in terms of my feeling that work was good for him de *403 spite his illness and he had symptoms shortness of breath on minmal activities such as walking across the room. He was able to do the work which he had done for a long time I think because he was competent in what he was doing and — you want me to narrate this thing from beginning to — * * of
The evidence shows that despite this disease, which became progressively worse, the decedent continued to work and work well. The evidence shows that Mr. Miller was brought into employment with Louisiana and Southern because of his knowledge and experience, in order to assist in setting up the special risk division of that company, and did his job so well that his salary was a year on January 1, 1967, and several increased from $15,000.00 to $16,000.00 a year on January 1, 1967, and several months thereafter was made vice-president of the special risk division. The manner in which he accomplished his functions led to a further promotion in October, 1967, when he was placed in charge of the field services department in the agency department of the company. There is no question but that Mr. Miller was doing his work in an excellent fashion up to this time, as his record reflects that he continued to receive commendations and promotions up to this particular change in duties.
After Mr. Miller received his promotion in October, 1967, he began experiencing difficulty performing his duties. A consideration of the testimony convinces me that the inability to fulfill his job obligations was due to his dislike of the new position, and the friction that he experienced in getting along with the other persons employed by the company. In the words of the president of the company, he was discharged because he was not able to fill the job.
At the time of his discharge, it was the opinion of Dr. Kaplan that Mr. Miller was medically disabled and probably unemployable in any other capacity since 1967. He testified that he certified Mr. Miller as disabled on the date of February 26, 1968, simply because that was the date that Mr. Miller came into his office asking to be certified; that basically he was on that day in the same condition that he had been for over a year previously. It is obvious from Dr. Kaplan’s testimony, that Mr. Miller was clearly unable to do anything but perform a sedentary occupation. However, this is precisely what his occupation was, and he was not called upon to do any physical labor whatsoever. The testimony of his secretary, who was with him constantly while at work, and upon whom he learned heavily for assistance, is to the effect that he had no physical disability nor any mental disability which would prevent him from accomplishing his work. The fact is that he remained at work, apparently attempted to accomplish the work and would have done so, except for the fact that he disliked his new position.
Of course Mr. Miller is deceased, and there is no testimony as to his personal experience, but it is noted that there was placed in evidence a suit by him on an employment contract against Louisiana and Southern based on his discharge in which the petition signed by his attorney recites that he was faithfully and efficiently discharging the duties of his office. This statement of itself is of course of no great evidentiary value; however, it is consistent with the testimony of his secretary, Dr. Kaplan, and others that he was apparently not prevented from accomplishing his work because of physical disability.
Based upon the foregoing discussion of the record in this case, I am of the opinion that the judgment of the trial court is correct and should be affirmed. A judgment of the trial court should not be reversed unless there is a showing of manifest error. Where, as here, there is sufficient evidence to support the conclusions of the trial judge, we should not disturb those conclusions.
I respectfully dissent.