[L. A. No. 1380. Department One.—January 28, 1904.]

## C. J. CREIGHTON, Appellant, v. A. GREGORY, Respondent.

ACCORD AND SATISFACTION—EXTINCTION OF OBLIGATION OF CONTRACT.— An accord is an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled, and an acceptance by the creditor of the consideration of an accord constitutes satisfaction. In an action upon a contract, where the admitted findings show beyond question that there was a dispute between the parties as to what was due under the contract, and that plaintiff accepted of something different from or less than that to which the person agreeing to accept was entitled, the acceptance extinguished the obligation, and there was an accord and satisfaction.

ID.—INTENTION OF PARTIES—LEGAL EFFECT OF CONDUCT—ACCEPTANCE OF CHECK GIVEN AS PAYMENT—ESTOPPEL OF PLAINTIFF.—The intention of the parties must be determined from all the circumstances attending the transaction, and the legal effect of the conduct of the parties is for the court to pronounce. Where the defendant gave a check in full payment of a disputed account, and it was signed at plaintiff's request, and accepted and cashed by plaintiff, plaintiff must be held to have known that the defendant signed the check on the supposition that it closed the transaction, and ended their dealings under the contract; the plaintiff is estopped to deny the effect of his deliberate act in obtaining and cashing the

check, under the circumstances disclosed; and he cannot be heard to say that he regarded the payment as having been made only on account.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. Frank F. Oster, Judge.

The facts are stated in the opinion.

Eugene C. Campbell, for Appellant.

There was no accord and satisfaction. The receiving of a less sum of money than is due upon a liquidated demand given as payment in full does not satisfy the whole demand, where there is no new consideration. (*Deland* v. *Hiett*, 27 Cal. 613;[1] *Peachy* v. *Witter*, 131 Cal. 316; *Richmond Ry. Co.* v. *Walker*, 92 Ga. 488; *Fuller* v. *Kemp*, 138 N. Y. 237; *Massory* v. *Tomlinson*, 148 N. Y. 326;[2] *Baird* v. *United States*, 96 U. S. 430; *Martin* v. *Frantz*, 127 Pa. St. 389;[3] *Leison* v. *Anderson*, 99 Mich. 247;[4] *Hewitt* v. *Flint Ry. Co.*, 67 Mich. 61; *Bright* v. *Coffman*, 15 Ind. 371;[5] *Bragg* v. *Danielson*, 141 Mass. 195.) The acceptance of a check given as payment in full of a larger demand does not discharge the entire debt. (*Meyer* v. *Green*, 21 Ind. App. 138.[6])

Hight & Swing, and J. P. Hight, for Respondent.

The written contract was altered by an executed oral agreement. (Civ. Code, sec. 1698.) The actual *bona fide* dispute between the parties was a sufficient consideration for the accord and satisfaction, and an acceptance of a conditional tender of payment in full in such case is a satisfaction. (*C. M. and St. P. Ry. Co.* v. *Clark*, 178 U. S. 353; *Fuller* v. *Kemp*, 138 N. Y. 231; *Massory* v. *Tomlinson*, 148 N. Y. 326;[2] *Ostrander* v. *Scott*, 161 Ill. 339; *Tanner* v. *Merrill*, 108 Mich. 58; *Hutton* v. *Stoddart*, 83 Ind. 539; *Washington Nat. Gas Co.* v. *Johnson*, 123 Pa. St. 576;[7] *American Manganese Co.* v. *Virginia Manganese Co.*, 91 Va. 272; *Donohue* v. *Woodbury*, 6

[1] 87 Am. Dec. 102.
[2] 51 Am. St. Rep. 695.
[3] 14 Am. St. Rep. 859.
[4] 41 Am. St. Rep. 597.
[5] 77 Am. Dec. 96.
[6] 69 Am. St. Rep. 344, and note.
[7] 10 Am. St. Rep. 553.

Cush. 148;[1] *Tuttle* v. *Tuttle,* 12 Met. 554;[2] *Hills* v. *Sommers,* 53 Hun, 392; *Perkins* v. *Headley,* 49 Mo. App. 556; *Bull* v. *Bull,* 43 Conn. 455.)

CHIPMAN, C.—Plaintiff sues upon a written contract reading as follows:—

"REDLANDS, CAL., December 1, 1900.

"This is to certify that A. Gregory has bought and Dr. C. J. Creighton has sold his entire crop of navel oranges, now growing on his nineteen-acre place on Brookside Avenue at $1.92 per hundred pounds, delivered at the packing house of A. Gregory at Redlands. All fruit to be accepted and paid for, but it is agreed that C. J. Creighton will use due diligence in picking not to put in any split oranges that are not merchantable. Five hundred dollars ($500) paid down on contract, balance paid cash on delivery of fruit. All fruit to be accepted before March 15th, 1901.

"A. GREGORY, Buyer.

"C. J. CREIGHTON, M. D., Seller."

In his complaint for a first cause of action, plaintiff alleges delivery under the contract of part of the fruit between December 2 and December 6, 1900, and the balance between March 15, 1901, and April 4, 1901, except certain fruit referred to in a second cause of action. He alleges that there remains unpaid $690.26.

In the second cause of action it is averred that by the terms of said written contract the defendant was liable for certain other oranges which became overripe and decayed because plaintiff was not permitted to deliver the fruit, to plaintiff's damage of $330.25. Defendant answered, admitting the execution of the alleged written contract; alleged that by its terms defendant was bound to receive only merchantable oranges; that on January 1, 1901, a severe frost greatly damaged the fruit then on plaintiff's trees and rendered them unsound and not merchantable, and therefore not within the contract; that thereupon, for the purpose of adjusting the loss by frost, an oral contract was entered into by the parties altering the written contract so that plaintiff should deliver, within a reasonable time, all of the fruit except split oranges,

---

[1] 52 Am. Dec. 777.                    [2] 46 Am. Dec. 701.

and except such fruit as had become or should become by reason of said frost so split that it could not be delivered, and that defendant would accept the fruit so delivered and pay for the same as follows, to wit: $1.92 for each one hundred pounds of the first fifteen hundred boxes of said oranges delivered, and $1.42 for all of said oranges except the first fifteen hundred boxes delivered as aforesaid; that plaintiff. paid in full for all the said oranges, and in full execution of said oral contract. Facts as to the final payment are set forth which, it is alleged, constituted accord and satisfaction of plaintiff's claim. The answer to plaintiff's second cause of action is, that the fruit therein referred to was damaged and unsound by reason of the frost visitation already referred to, and could not be delivered for that reason and for like reason could not have been accepted if tendered.

Finding I is, that the written contract was entered into between the parties, and finding II is, that pursuant to the contract plaintiff delivered, and defendant accepted, between December 2, 1900, and December 6, 1900, 18,230 pounds of oranges, and that no more were delivered until March 15, 1901. These findings are not challenged.

Finding No. III is, that about January 1, 1901, a severe frost visited plaintiff's orchard, and defendant at all times thereafter contended that much of the orange crop was so badly frozen as to be unmerchantable, and that as the damaged oranges could not with certainty be sorted from the good ones, defendant could not be compelled to receive any of them, and in any event was not obliged to accept oranges that had been rendered worthless by frost, and that his contention was based on legal advice given defendant. The court also found that during the latter part of February, 1901, defendant notified plaintiff, and the latter admitted, that some of the oranges were frozen, and therefore worthless; that on March 5, 1901, defendant stated to plaintiff that defendant was not obliged to take any of said frozen fruit, but was willing to take the first one thousand boxes at the contract price if plaintiff would consent to take $1.42 per hundred pounds for the remainder of the crop. That plaintiff declined this offer, but stated that if defendant would pay him the contract price for fifteen hundred boxes, and would pay him at the rate of $1.42 per

hundred pounds for the remainder, he would consent thereto; that defendant accepted this proposition, and so notified plaintiff on March 17, 1901, and that thereafter plaintiff delivered the remainder of the orange crop at defendant's packinghouse in Redlands. The foregoing facts found in finding III are challenged as not supported by the evidence.

It is found, and the facts are not disputed, that after March 17, 1901, plaintiff delivered the remainder of the crop at defendant's warehouse in Redlands, and completed the delivery about April 4, 1901; that he delivered 203,187 pounds in all, and defendant paid at different times to plaintiff prior to April 20, 1901, the sum of twenty-four hundred dollars.

Finding VI is, that on April 20, 1901, plaintiff came to defendant to make a final settlement, and plaintiff then insisted on payment at $1.92 per hundred pounds for all the oranges; that the interview was "stormy," in which defendant accused plaintiff of bad faith, and that defendant reminded plaintiff of his offer as found in finding III, and of defendant's acceptance, and that he "had received all fruit which he had received after such acceptance on that understanding. Plaintiff then and there admitted the offer and acceptance, but stated that he made the offer for the sole purpose of getting defendant to receive the oranges. Defendant then and there told plaintiff that he would only settle in accordance with the modified agreement, $1.92 per hundred pounds for the first fifteen hundred boxes of oranges, and $1.42 per hundred pounds for the excess over the first fifteen hundred boxes. *Plaintiff thereupon departed without making any response thereto.*" Plaintiff challenges only the last paragraph of this finding marked in italics.

It is then found (finding VII) that on the departure of plaintiff, and on the same day (April 20th), defendant had his bookkeeper make out the account between plaintiff and defendant, which showed fifteen hundred boxes (65,174 pounds) at $1.92 (the written contract price), $1,251.34, and 3,190 boxes (138,013 pounds) at $1.42 (the price as modified), $1,959.78, making in all $3,211.12, on which it was stated as paid $2,400, in cash, leaving still due $811.12. This statement was stamped "Paid Apl. 20, 1901, A. Gregory," and together with a check for the balance was mailed to plaintiff, but by

an oversight the check was not signed. *"On the following day plaintiff returned to defendant's office with this check,"* and called attention to the omission of the signature. "Whereupon defendant affixed his signature thereto and personally handed the check to plaintiff, who took the check without making any objection thereto." Plaintiff then went away with the check and on April 22, 1901, *"received payment thereof at said bank, in full satisfaction of his demand against defendant,* and applied the proceeds thereof to his own use." Plaintiff made no further demand on defendant prior to the commencement of the action May 17, 1901. The only parts of this finding objected to as not supported by the evidence are marked in italics.

The court in its conclusions of law found that "there was a genuine dispute 'between the parties as to the actual amount which was due from defendant to plaintiff,' which dispute was *bona fide* and in good faith on the part of defendant. Said dispute was in existence on April 19, 1901, and theretofore, and was still in existence on April 22, 1901, at the time plaintiff cashed the said check"; that "when defendant mailed said check and statement of account to plaintiff, defendant intentionally thereby tendered said check to plaintiff as an accord, and in full satisfaction, of the said contract between plaintiff and defendant," and that "when plaintiff took the said check back to defendant for the signature of defendant thereto and received back from defendant the check signed by defendant and cashed said check, and appropriated the proceeds thereof to his own use, that plaintiff did so in full satisfaction of plaintiff's claim against defendant on account of said contract," and "that by reason thereof said contract became extinguished."

Plaintiff claims in his specifications that these conclusions are unsupported by the evidence.

Counsel for the respective parties argue at some length the question whether the risk of damage to the fruit by frost fell upon plaintiff or defendant under the terms of the contract. Much evidence was offered by defendant, and admitted without objection, fully sustaining the finding of the court as to damage of the fruit by frost. A motion was made by plaintiff after this evidence as to frost was all in, that "as a defense to

the action of plaintiff'' it be stricken from the record as ir-
relevant, incompetent, and immaterial, and on the further
ground "that there is no warranty on the part of plaintiff
that the fruit would not become frosted—even if it were
frosted—and that that is not an issue in the case." The
motion was granted, and plaintiff urges that it was error for
the court to find as to this evidence, and that the finding No.
III is unsupported because the evidence was stricken from
the record; and also that the finding of facts relating to the
oral modification of the contract is not supported by the evi-
dence.

The decision finally reached by the trial court, with which
we agree, makes it unnecessary to determine the meaning of
the contract in respect of the point first above noted. This
very point may have contributed to the dispute which arose
between the parties, and it is immaterial which one of the
parties was right or which was wrong, for they could agree
to the terms of settlement in any event. For like reason it
became immaterial to find as the court did concerning the
damage by frost, and it is immaterial whether these findings
are sustained by evidence. Indeed, plaintiff's motion to strike
out the evidence as to frost was on the ground that it was
immaterial as a defense in the case, and also because the con-
tract contained "no warranty on the part of plaintiff that
the fruit would not become frosted."

So also are we relieved from determining whether the find-
ing as to the modification of the contract is supported by the
evidence. This finding may be unsupported, and yet there
may have been accord and satisfaction. The same may be
said as to the point that there is no finding as to the second
cause of action.

Plaintiff's objection to the facts found in finding VI, as
shown by his specifications, was confined to the portions
marked in italics. The other facts found must be taken as
admitted. Whether plaintiff returned after the "stormy in-
terview" to defendant's office "the following day," or two
days later, as he claims, is not material. There is sufficient
evidence that what took place is correctly found by the court.
The only objection made in the specifications to finding VII
is not to the fact that plaintiff took the check given him and

went away with it and collected the money on it, but that it was not "in full satisfaction of his demand against defendant," which is perhaps a question of mixed law and fact, and may be disposed of in considering what are designated as the conclusions of law of the trial court, which are also in some respects both conclusions of fact and law, and which plaintiff claims are unsupported by evidence. We are thus brought to the principal question in the case,—Was there an accord and satisfaction? "An accord is an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled." (Civ. Code, sec. 1521.) Though bound to execute such agreement, "yet it does not extinguish the obligation until it is fully executed." (Civ. Code, sec. 1522.) "Acceptance, by the creditor, of the consideration of an accord extinguishes the obligation, and is called satisfaction." (Civ. Code, sec. 1523.)

The admitted findings of facts show beyond question that there was a dispute between the parties as to what was due under the contract, and that there was by plaintiff an acceptance of "something different from or less than that to which the person agreeing to accept" was entitled, and this acceptance extinguished the obligation and constituted satisfaction.

The intention of the parties must be determined from all the circumstances attending the transaction, and the legal effect of the conduct of the parties is for the court to pronounce. That defendant regarded his payment as final, and in extinction of his obligations under the contract, might well have been found by the court. And we do not think that plaintiff can now, in view of the facts found, be heard to say that he regarded the payment as having been made on account. When plaintiff came to defendant, it was for final settlement, and he contended for payment at the contract price for all of the fruit, while defendant contended for the modified price. Defendant informed plaintiff that he would settle on no other terms, and plaintiff then left him. The account was made out in accordance with defendant's contention and sent to plaintiff, with a check for the balance, which by an oversight was unsigned. Plaintiff's counsel says in his brief: "Sending an account through the mail is noth-

ing more than evidence of the way the sender understands the account between the parties. In this case it was, 'I owe you so much,' and the check (if it had been signed) would have impliedly said, 'and this pays the amount which I owe you.' "' The failure to sign the check, in view of the conduct of plaintiff in returning to get it signed, and subsequently collecting the money on it, is immaterial. Defendant signed it at plaintiff's request, and plaintiff must be held to have known that defendant signed it on the supposition that it closed the whole transaction, and it is a reasonable inference from the evidence that defendant would not have parted with the check had he not been led by plaintiff to suppose that it ended their dealings under the contract. Under the circumstances disclosed, plaintiff has placed himself under the provisions of subdivision 3 of section 1962 of the Code of Civil Procedure, and is estopped to deny the effect of his deliberate act.

Certain specifications of errors at law occurring at the trial are referred to in plaintiff's brief. He fails to state the names of the witnesses whose evidence was admitted or excluded over his objections, both in the specifications and in his brief. There is nothing in the brief to show where the evidence is to be found in the record. This court ought not to be required to grope through the transcript in order to identify the particular errors complained of. We have, however, endeavored to do this, and, so far as we can see, the evidence related to matters which do not in any way affect the question of accord and satisfaction.

We advise that the judgment and order be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Angellotti, J., Shaw, J., Van Dyke, J.