[Civ. No. 3914.   Third Appellate District.—November 29, 1929.]

JOHN WORK et al., Respondents, v. ASSOCIATED ALMOND GROWERS OF PASO ROBLES (a Corporation), Appellant.

Wm. G. Griffith and Griffith & Thornburgh for Appellant.

C. F. Lacey for Respondents.

PULLEN, J., *pro tem.*—The defendant appeals from a judgment in favor of plaintiffs who sued for a balance on the purchase price of real property. Negotiations were carried on in behalf of the parties to this appeal, which culminated in an option agreement, the portion which is essential to a determination of this appeal being as follows:

"Whereas, the sellers are owners of certain lands in San Luis Obispo and Monterey counties, California, containing approximately six thousand (6000) acres, more particularly described in parcels as follows:

"Parcel No. 1. All that portion of said tract of 6000 acres of land lying south of the county road in sections 27, 33 and 34, and the land in San Luis Obispo county joining said section 33 on the south.

"Parcel No. 2. All of said tract of 6000 acres lying north of the south line of sections 15 and 16 in said township 24 south of range 13 east, M. D. M.

"Parcel No. 3. All that part of said tract of 6000 acres lying south of the north line of section twenty-nine, in township 24 south of range 13 east, M. D. M., and including all lands in township 25 south, in San Luis Obispo county, and that part of section thirty-three lying north of the county road running through said section thirty-three, excepting however all of section 34 embraced in the foregoing description.

"Parcel No. 4. All that part of said tract of 6000 acres lying east of the north and south line between sections 21 and 22 and sections 27 and 28 in said township 24 south of range 13 east, M. D. M.

"Parcel No. 5. All that part of said tract of 6000 acres remaining after the selection of the foregoing described parcels.

"And the said buyer desires an option upon said lands in order that he may be able to sell the same, and have said land planted to fruit and nut trees."

At the time of the execution of this agreement the acreage owned in fee by respondents, as ascertained by surveys subsequent to the execution of the option was considerably less than 6,000 acres, but after the execution of the option, and before tender thereunder, respondents had acquired title to 6,028.15 acres, and claim that was the acreage contemplated, whereas, appellant urges that only the land to which respondents had title in fee, together with a portion owned by a son of the respondents, was included in the option and amounted to 5,708.01 acres. It is true that at the time of the execution of the option respondents had record title· to less than 6,000 acres, but embraced within the exterior boundary fences of respondents' ranch, and in their possession for many years, were parcels of land standing in the names of—Pence 160 acres, Colyer 80 acres, 80 acres of unpatented government land, and 597.68 acres in the name of Robert Work, already referred to as a son of respondents. Appellant contends that the option agreement clearly shows on its face that the parties dealt only with the land then owned by respondents, approximating 6,000 acres in extent, situate in the counties named.

The descriptive clause, such as ''all lands and real estate belonging to the said party of the first part, wherever the same may be situated,'' etc., has been held sufficient, in a number of California cases, starting with *Lick* v. *O'Donnell*, 3 Cal. 59 [58 Am. Dec. 383], but here, neither the respondents nor appellant ask that the option be given its literal construction, for as to the 597.68 acres belonging to Robert Work, appellant concedes that title to that did not stand in the name of respondents at the date of the option, but nevertheless, it claims it was conveyed by the option. Just how appellant differentiates the Robert Work land from the Pence or Colyer land we fail to see.

An examination of the record shows that when the appellant's representatives went upon the land, they were taken to an elevated point near the center of the ranch, and the fence lines were pointed out, but they declined to make a more detailed tour, although urged to do so by respondents; that they had maps prepared for subdivision purposes embracing the entire ranch, which included the Pence, Colyer and Robert Work tracts. Appellant paid taxes on the entire 6,028.15 acres for the first two years of its occupancy; it removed buildings from the Colyer property and planted a consider-

able portion of the Robert Work tract to almonds and leased a part of the land in dispute to others.

In the particular descriptions included in the parcels 1, 2, 3 and 4, the boundaries are given with reference to roads or section lines, paragraph 5 using the language: "All that part of said tract of 6000 acres remaining after the selection of the foregoing described parcels"; which clearly indicates some physical external boundaries within which the approximate 6,000 acres lay, and undoubtedly that boundary was the exterior fence seen by the parties at the time the ranch was viewed. It also appears in evidence that the appellant, in its maps and correspondence, referred to the tract as the "Independence Ranch," which was the familiar neighborhood name given to the entire tract occupied by respondents, and within their exterior fence lines.

█ In determining the meaning of a written agreement, the courts have always given the utmost consideration to the interpretation which the parties themselves have placed upon it, as evidence of their acts, "and in all cases where the terms of their contract, or the language they employ, raises a question of doubtful construction, and it appears that the parties themselves have practically interpreted their contract, the court will follow that practical construction. It is to be assumed that parties to a contract best know what was meant by its terms, and are the least liable to be mistaken as to its intention; that each party is alert to his own interests and to insistence on his rights, and that whatever is done by the parties, and contemporaneously with the execution of the contract, is done under its terms as they understood and intended it should be . . . In its execution, every executory contract requires more or less of a practical construction to be given it by the parties, and when this has been given, the law, in any subsequent litigation which involves the construction of the contract, adopts the practical construction of the parties as the true construction and as the safest rule to be applied in the solution of the difficulty." (*Mitau* v. *Roddan*, 149 Cal. 14 [6 L. R. A. (N. S.) 275, 84 Pac. 145, 150].) In the case just cited it is also said: "Parties to a contract have a right to place such an interpretation upon its terms as they see fit, even when such an interpretation is apparently contrary to the ordinary meaning of its provisions." █ The unequivocal acts on the part of the appellant, as to the possession,

payment of taxes, removal of buildings and preparation of maps and the retention of the Robert Work land, are sufficient in themselves to defeat the contention it now advances, and to estop the defendant from insisting upon its present interpretation of the option.

Appellant also contends that based upon certain correspondence and payments between respondents and a trust company acting for the parties herein, that an accord and satisfaction has been established, but an examination of the correspondence does not justify such conclusion. "It is an essential element in accord and satisfaction by tender of a check, that the tender is subject to the condition that the acceptance of the check is satisfaction in full. This condition is not shown by the mere fact that the debtor accompanies the check with an account showing a balance equal to the amount of the check, and it is disproved where the giving and acceptance of the check is followed by such conduct of both parties as clearly shows that they did not consider the check a final settlement of the debt." (1 Cal. Jur., p. 134, par. 10; *Lapp* v. *Muscoy,* 166 Cal. 27 [134 Pac. 989]; *Duncan* v. *F. A. Hihn Co.,* 27 Cal. App. 155 [148 Pac. 971]; 1 Cor. Jur., p. 558.) An examination of the correspondence between the parties shows that there was still an uncertainty as to the exact acreage upon which the price per acre was to be computed, and in substance, practically all the letters from the trust company addressed to the bank acting for respondents, stated that if the figures submitted by the trust company did not agree with the figures of respondents, that a statement of the amount claimed be sent so that the difference might be checked. This falls considerably short of the requirement to establish an accord and satisfaction.

The court below computed the balance due from an exact acreage of 6,000 acres, rather than upon the acreage determined by the survey, to wit, 6,028.15, but inasmuch as no objection has been urged to the findings in this particular, we adopt the same as a basis of computation, although it is not perhaps strictly in accordance with the testimony or the evidence adduced.

The judgment of the trial court is affirmed.

Thompson (R. L.), J., and Plummer, Acting P. J., concurred.