[L. A. No. 21779.   In Bank.   July 27, 1951.]

G. E. POTTER, Respondent, v. PACIFIC COAST LUMBER COMPANY OF CALIFORNIA et al., Appellants.

Buck & O'Reilly and John F. Runner for Appellants.

Renetzky & Davis, Paul W. Davis and Laura O. Coffield for Respondent.

SPENCE, J.—Plaintiff sought to recover the alleged balance due under contracts for the sale of three carloads of lumber. Defendants pleaded an accord and satisfaction as an affirmative defense. The trial court made findings rejecting said defense and entered judgment in favor of plaintiff for the sum of $1,011.96. From such judgment, defendants appeal.

Defendants argue the single proposition that the findings against the existence of an accord and satisfaction are contrary to the undisputed facts. An examination of the record sustains defendants' position.

Plaintiff, a lumber broker in Oregon, contracted to sell three carloads of Oregon lumber to defendant company, a California corporation with offices in San Luis Obispo. Defendants C. V. Wilson and S. G. Truitt, as vice-president and purchasing agent, respectively, of defendant company, negotiated the contracts. The terms of sale specified grade, widths, and surfacing of the lumber and a stated price per

1,000 board feet "F.O.B. mill," with 2 per cent discount for cash. At the trial defendants claimed that under business custom with respect to such sales of Oregon lumber "F.O.B. mill," the freight charge would be at the "Portland rate"—that is, the buyer would be obligated to pay the shipping cost as computed from Portland to the point of destination—unless a different zone or rate was specified; that such uniform practice prevails so that the buyer may know what his "laid down cost is" for lumber as supplied from various small mills located in different parts of the state, and any freight cost that the seller "may have to get the lumber into the [applicable] zone is reflected in the mill price"; and that on such basis, the buyer would regularly charge back to the seller any "excess freight" paid to the carrier. Plaintiff denied having any knowledge of such applicable "zone system" and the existence of such business custom. In none of the three contracts in question was there anything said concerning freight or the shipping rate chargeable except the bare term "F.O.B. mill."

The first order called for shipment from Oregon to San Luis Obispo. That carload arrived with a freight bill from Spokane, Washington, to San Luis Obispo, as the result of an erroneous routing. Defendant company paid the carrier's freight bill. It then remitted $2,930.14 by check to plaintiff, this sum representing the amount of plaintiff's invoice, less the 2 per cent cash discount and $86.40 as "freight overcharge"—being the difference between the freight actually paid to the carrier and the freight from Portland, Oregon.

The other two orders called for shipment, respectively, to Grover City, California, and Santa Barbara. The lumber in each of these carloads was rough-milled at Seneca, in eastern Oregon; one carload was then shipped to Brewster, Oregon, for "re-manufacture," and from there transported to Grover City, while the other carload was shipped to Portland for "re-manufacture," and thence to Santa Barbara. On these two shipments defendant company remitted to plaintiff by check the respective amounts of $2,594.76 and $1,772.89, having deducted in each instance the 2 per cent cash discount and the freight rate chargeable from eastern to western Oregon, respectively $500.35 and $361.49. In addition, with respect to the Santa Barbara car, these further deductions were made: $35.71 for "scant loading," an extra charge exacted by the carrier because the car had not been

fully loaded; $111.81 or $5.00 per thousand board feet, for improper surfacing of the lumber; and $223.61, or $10 per thousand board feet, for "random widths." With regard to these latter two items on the Santa Barbara car, it is undisputed that the contract called for 12-inch stock exclusively, surfaced four sides; and that the lumber actually shipped consisted of "random widths," all of it less than 12-inch, and was surfaced on two sides only. According to defendants, the basis of the deduction for improper surfacing was the cost, at Santa Barbara, of having the lumber surfaced as ordered; and the basis for the deduction for "random widths" was the difference in retail price between the lumber ordered and that actually received.

In remitting for each of the three shipments, defendant company mailed a check or draft, attached to which was a voucher identifying the shipment for which payment was intended and setting forth the amount of the corresponding invoice, with deductions noted. Printed at the top of each such voucher was the following notation: "Payee will please detach and keep this statement. Payment of sight draft attached hereto is accepted in full settlement of account stated below, and endorsement thereof will constitute payee's receipt to the Pacific Coast Lumber Company of California." Plaintiff cashed each of the three remittance checks or drafts, and then later wrote to defendant company seeking additional payments.

The trial court found that defendants were indebted to plaintiff in the sum of $1,011.96 (apparently allowing defendants with respect to the San Luis Obispo car the deduction of $86.40 for the "freight overcharge"; and with respect to the Santa Barbara car the deductions for "scant loading," improper surfacing and "random widths"). With respect to defendants' special plea of an accord and satisfaction, the court found that the allegations thereof (except that the checks were actually sent to plaintiff and cashed by him) were untrue, thereby finding that it was not true that by the voucher attached to each check defendant company "informed plaintiff that it intended the check as full payment of a certain disputed claim," or that the vouchers "informed plaintiff that the said checks were intended as full payment," or that "plaintiff, by the acceptance, endorsement and/or depositing for collection of said drafts, or in any other manner, agreed to any settlement of the amount[s] due plaintiff." Defendants properly contest the propriety

of these findings relating to the alleged accord and satisfaction as without support in the record.

The great weight of authority undoubtedly supports the rule that where a claim is disputed or unliquidated and the tender of a check or draft in settlement thereof is of such character as to give the creditor notice that it must be accepted "in full discharge of his claim" or not at all, the retention and use of such check or draft constitute an accord and satisfaction (1 C.J.S. § 34, p. 528); and it is immaterial that the "creditor protests against accepting the tender in full payment" (1 Am.Jur. § 26, p. 228), for in such case "the law permits but two alternatives, either reject or accept in accordance with the condition" (Williston on Contracts, rev. ed., vol. VI, § 1856, p. 5220; see, also, 1 Cal. Jur. § 10, p. 134; annos. 34 A.L.R. 1035, 1044; 75 A.L.R. 905, 916; *Lapp-Gifford Co.* v. *Muscoy Water Co.*, 166 Cal. 25, 27 [134 P. 989]; *Berger* v. *Lane*, 190 Cal. 443, 447 [213 P. 45]; *Sierra & San Francisco Power Co.* v. *Universal Electric & Gas Co.*, 197 Cal. 376, 387 [241 P. 76]; *Johnston* v. *Burnett*, 17 Cal.App. 497, 501 [120 P. 436]; *Russell* v. *Riley & Peterson*, 82 Cal.App. 728, 737-738 [256 P. 557]; *Robertson* v. *Robertson*, 34 Cal. App.2d 113, 118 [93 P.2d 175]). Of course, for the principle of accord and satisfaction to apply in disposition of an unliquidated claim, there must be a "bona fide dispute" between the parties (*Stub* v. *Belmont*, 20 Cal.2d 208, 218 [124 P.2d 826]), but "it matters not that there was no solid foundation for the dispute" as the test is whether "the dispute was honest or fraudulent" (*B. & W. Engineering Co.* v. *Beam*, 23 Cal.App. 164, 171 [137 P. 624]; see 1 C.J.S. § 32(b), pp. 515-517; 1 Cal.Jur. § 7, p. 131; *Berger* v. *Lane, supra,* 190 Cal. 443, 450-451; *Shortell* v. *Evans-Ferguson Corp.,* 98 Cal.App. 650, 663 [277 P. 519]; *Everhardy* v. *Union Finance Co.,* 115 Cal.App. 460, 465 [1 P.2d 1024]). Also, the debtor must make it clear that acceptance of what he tenders is subject to the condition that it shall be in full satisfaction. (1 Am.Jur. § 22, p. 223; Ann.Cas. 1915A, 954; *Lapp-Gifford Co.* v. *Muscoy Water Co., supra,* 166 Cal. 25, 27-28; *Biaggi* v. *Sawyer,* 75 Cal.App.2d 105, 113-114 [170 P.2d 678].)

In the application of these settled rules to the present case, defendants properly recognize that "A finding of the trial court upon conflicting evidence will not be disturbed on appeal if there is evidence of a substantial character which reasonably supports the judgment." (*Fewel & Dawes, Inc.* v. *Pratt*, 17 Cal.2d 85, 89 [109 P.2d 650].) Likewise

it must be said that the conclusions of a trier of fact from evidence or testimony that is reasonably susceptible of conflicting or opposing inferences will not be set aside by an appellate tribunal. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) ■ But these principles do not relieve an appellate court of its duty of analyzing the record for the purpose of determining whether or not there is any evidence of substantial character which reasonably supports the judgment as applied to the peculiar facts of the case. (See 1 C.J.S. § 49(b), pp. 565-567.) ■ Upon such review, the conclusion is inescapable that the record here does not justify the finding that no accord and satisfaction was effected by the parties in settlement of plaintiff's claim, and that the trial court erred, as a matter of law, in adjudicating this issue contrary to defendants' position. (2 Cal.Jur. § 542, p. 918.)

Here the check or draft in each instance remitted to plaintiff in payment for the respective carloads of lumber had attached a voucher with a printed statement thereon declaring, in clear and unequivocal terms, that the tender was made "in full settlement of account stated below" and calling for acceptance upon that precise condition. Plaintiff clearly understood, according to his own admissions at the trial, that defendant company intended such remittances to constitute payment in full of the particular claim as plainly identified on the voucher. Thus, plaintiff, in response to the question of whether he had talked to defendant Wilson before cashing the draft tendered in payment for the first shipment, stated: "Yes, I think I did; and then I felt, if they were going to be that way about it, the best thing for me to do was to cash the draft so they couldn't stop payment on the draft. This was not a check, it was a draft. I knew that, with a dispute of that type, that there would be a question as to my accepting that as final payment, but I figured that a bird in the hand was better than nothing." Plaintiff further testified that "at the time [he] cashed [the] checks, [he] knew there was a dispute as to the amounts"; that he checked "the deductions" that were taken, knew the "freight" amounts to be "so much" and had "notice" of the other items as shown "from the attached statement[s]." From this testimony it plainly appears that there was a bona fide dispute between the parties, not only as to the assessable freight charges, but also as to the other matters listed by defendant company as deductible items upon tender of the checks or drafts in full settlement, and that plaintiff so understood the explicit terms of the proffered settle-

ment. In such circumstances, plaintiff's acceptance, endorsement, and cashing of the checks or drafts amounted in legal effect to an agreement that the claims be thereby compromised and settled (*Russell* v. *Riley & Peterson, supra,* 82 Cal.App. 728, 737-738); he "could not accept the benefits of the checks by cashing them, without consenting to the conditions endorsed thereon" (*Robertson* v. *Robertson, supra,* 34 Cal.App. 2d 113, 118); and such uncommunicated mental reservations as plaintiff may have had that he and defendants "would be able to settle it [the dispute] one way or the other later" could not militate against the validity of the accord and satisfaction (*Creighton* v. *Gregory,* 142 Cal. 34, 41 [75 P. 569]). So pertinent is the statement in *Johnston* v. *Burnett, supra,* 17 Cal.App. 497, at page 501: "He [plaintiff] was bound either to reject the check, or, by accepting it, accede to the defendant's terms. . . . He could not accept the benefit, and reject the condition. . . . The use of the check was *ipso facto* an acceptance of the condition. The minds of the parties then met, so as to constitute an accord.''

Plaintiff argues that "the conduct of both parties after the receipt and cashing of the drafts" indicates that "neither of them intended that the prior acceptance by [plaintiff] of the drafts was in full settlement of his claim[s]." To this point he cites these evidentiary considerations: that until he received the respective drafts, he did not know that defendants were disputing the amounts allegedly due on the respective shipments; that after receiving the first of the three drafts but before cashing it, he spoke to defendant Wilson by telephone and protested the deductions taken; that after cashing the three drafts, he went to defendant company's Seattle office and discussed the factors in dispute; that there then followed an exchange of correspondence between him and defendant Wilson as to the propriety of the deductions; and finally, the whole subject was discussed at a meeting in Santa Barbara between himself and defendant Wilson, culminating in the latter's offer of a settlement but that he would not agree to it. However, these matters do not strengthen plaintiff's position. Reasonably viewed, they simply show that plaintiff did not willingly assent to the condition of "full settlement" accompanying the three remittances; that after cashing the three drafts tendered for acceptance on the prescribed express terms, he nevertheless persisted in his efforts to collect additional amounts which he claimed to be still due under the original contracts of sale; and that defendants remained firm

in the position that they had taken at the time the checks or drafts were tendered, until finally, for reasons which do not appear, defendant Wilson at the Santa Barbara meeting made an offer of compromise, which was in turn rejected by plaintiff. ■ As to the latter factor, it is code law that "An offer of compromise is not an admission that anything is due" (Code Civ. Proc., § 2078), it constitutes no proof of liability, and its admission into evidence without objection cannot affect the disposition of this case. As was said in *Estate of Johanson*, 62 Cal.App.2d 41, at page 56 [144 P.2d 72]: "Compromises are favored in law and a man is allowed to negotiate for the purchase of his peace without prejudice to his rights." ■ Accordingly, none of these factors, either singly or in combination, can be said to have deflected from the positive position taken by defendant company in tendering the respective checks or drafts for acceptance in full discharge of the respective accounts, or from the consequences of plaintiff's cashing such checks and drafts upon that basis in establishment of an accord and satisfaction. (*Johnston* v. *Burnett, supra*, 17 Cal.App. 497, 501.)

Plaintiff unavailingly cites cases where accompanying correspondence failed to state that the remittance was "intended or offered as in full of all demands" (*Lapp-Gifford Co.* v. *Muscoy Water Co., supra*, 166 Cal. 25, 32) and the parties' continued uncertainty as to the extent of their differences called for further checking on the matter of an adjustment, conduct clearly showing that "they did not consider the [prior] check a final settlement of the debt" (*Work* v. *Associated Almond Growers*, 102 Cal.App. 232, 236 [282 P. 965]); where evidence of "constructive fraud, or at least mistake," operated to impeach the "conclusiveness of the asserted stated account" despite the notation of the words "full receipt" on the check (*Kinkle* v. *Fruit Growers Supply Co.*, 63 Cal.App. 2d 102, 115 [146 P.2d 8]); where the debtor "at the time the check was tendered . . . himself conceded that it did not represent the full amount due" and not only was there a failure to plead an "accord and satisfaction," but it was expressly "pleaded that there never had been an accounting" (*Owens* v. *Noble*, 77 Cal.App.2d 209, 215 [175 P.2d 241]). Under such distinguishable circumstances, it is not open to dispute that the trial court's finding that no accord and satisfaction had been effected by the parties was supported by substantial evidence. But that is not the record in this case. Here the condition imposed upon plaintiff's acceptance of the checks or

drafts was clear and unequivocal that payment was "intended as full satisfaction of the disputed account" (*Biaggi* v. *Sawyer, supra,* 75 Cal.App.2d 105, 114); there was no question of mistake or fraud to impeach the conclusiveness of the stated account; and there were no admissions by any of defendants that they regarded the accounts as still open for further adjustment and payment. While it is true that in case of conflicting evidence or where contrary inferences can be drawn from uncontradicted proof, whether "a dispute concerning the amount due and whether the tender was on condition that acceptance would be in full satisfaction are primarily questions of fact for the trial court" (*Owens* v. *Noble, supra,* 77 Cal.App.2d 209, 215) and "unless there is a lack of evidence to support the finding of the jury or the decision of the trial court in that regard, their determination of that issue [the existence of an accord and satisfaction] will not be disturbed on appeal" (*Moore* v. *Satir,* 92 Cal.App. 2d 809, 812 [207 P.2d 835]; also *D. E. Sanford Co.* v. *Cory Glass Coffee Brewer Co.,* 85 Cal.App.2d 724, 730 [194 P.2d 127]), just such lack of evidence prevails here. The record conclusively shows from plaintiff's own testimony that he knowingly accepted the remittances from defendants on the terms definitely stated on the accompanying vouchers in unequivocal expression of their intent as "full settlement," for he "figured that a bird in the hand was better than nothing." This state of the evidence cannot be reasonably held to give rise to conflicting inferences as to the intention of the parties to consummate an accord and satisfaction upon the tender and acceptance of the checks or drafts in question, but rather they irresistibly point to the conclusion that plaintiff is estopped to deny the effect of his deliberate act in full settlement of the disputed accounts between the parties. (See *Creighton* v. *Gregory, supra,* 142 Cal. 34, 41-42.)

Nor is it of legal significance that the freight charges were computed as separable items for deduction and constituted a major point of difference between the parties. While the freight items were listed as definite amounts on each of the vouchers accompanying the remittances, the total freight (only a part of which was disputed) was for all practical purposes integrated into the entire contract to which it related. To this point is defendant Wilson's undisputed testimony that defendant company, as the buyer of goods f.o.b. point of manufacture, must have "the mill price and the freight rate"—the "delivered price"—at hand so as to "know

what [the] laid down cost is." In such circumstances it would be unrealistic to isolate the freight items and regard such items as severable undertakings in the consummation of the parties' dealings. Moreover, in the case of one disputed shipment—the Santa Barbara car—there were also included, as deductible items, amounts for "scant loading," improper surfacing, and "random widths," so that it cannot reasonably be said that the parties considered, at the time of the tender and acceptance of the checks or drafts, that the only matters in controversy were the freight charges. Rather, as defendants maintain, the record clearly shows that in each instance plaintiff's entire demand was in dispute and the respective checks were intended and accepted in full discharge of the entire disputed obligation.

It is further suggested that defendant company, by the respective remittances in the reduced sums, paid only the conceded amount of indebtedness on each shipment. But that circumstance would not prevent an accord and satisfaction arising from acceptance of the conditionally offered remittances applicable to the entire demand. While there is some conflict in the authorities on whether the payment of the conceded part of the claim is a good accord and satisfaction if received in discharge of the whole (anno. 112 A.L.R. 1219), it is the majority view, as well as the "tendency of the later cases," to "sustain the discharge where there is a dispute as to any part of the claim made by the creditor, although the payment is only the smaller amount which was conceded by the debtor to be due." (1 Am.Jur. § 64, p. 251; also Williston on Contracts, rev. ed., vol. I, § 129, p. 439, and cases there cited.) Consistent with this "tendency" in the rationale of "the later cases" is the decision in *Robertson* v. *Robertson, supra,* 34 Cal.App.2d 113, where concededly due payments of support money were made by checks marked "in full payment to [date]" and the only dispute between the parties involved the question of whether a greater amount was due pursuant to the terms of a property settlement agreement. In sustaining the defense of an accord and satisfaction, the court aptly stated at page 118: "The consideration for the tender and acceptance of each check in a less amount was the determination of dispute, and the extinction of obligation in relation to each monthly payment so made."

"The law wisely favors settlements, and where there is a real and genuine contest between the parties, and a settlement is had without fraud or misrepresentation, for an amount

determined upon as a compromise between the conflicting claims, such settlement should be upheld, although such amount is materially less than the amount claimed by the person to whom it is paid." (*Post* v. *Thomas*, 212 N.Y. 264 [106 N.E. 69, 72]; in accord, *B. & W. Engineering Co.* v. *Beam, supra,* 23 Cal.App. 164, 171.) It is difficult to see here how defendant company could have been more explicit in stating to plaintiff the conditional tender of the checks or drafts in question, and we therefore conclude that the latter's acceptance and cashing of such checks and drafts pursuant to their unequivocal terms of "full settlement" constituted, as a matter of law, an accord and satisfaction.

The judgment is reversed, with directions to the trial court to make findings of fact and conclusions of law and to enter judgment thereon in favor of defendants in accordance with the views herein expressed.

Shenk, J., Edmonds, J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I dissent.

While the factual situation disclosed by the record may have presented a problem difficult of solution by the trier of fact, I cannot say that there was not sufficient evidence to support the finding that defendant corporation was indebteded to the plaintiff in the amount found, and for which judgment was rendered. This judgment was affirmed by the District Court of Appeal, Second Appellate District, Division One, and I adopt, as my dissent, the opinion of that court prepared by Mr. Presiding Justice White, which is as follows:

"Defendants appeal from a judgment in favor of plaintiff, a lumber broker, in an action for a balance claimed to be due under contracts for the sale of three carloads of lumber to the defendant corporation, Pacific Coast Lumber Company. Defendants C. V. Wilson and S. G. Truitt, as vice-president and purchasing agent, respectively, of defendant corporation, negotiated the contracts. The complaint was in the form of common counts. The answer, in addition to denials, set forth an affirmative defense of accord and satisfaction, the substance of the allegations in this respect being that three checks in stated amounts had been mailed to plaintiff by defendant corporation; that attached to each of said checks was a voucher in which said defendant informed plaintiff that it intended the check as full payment of a certain disputed claim; that

the vouchers so attached to the three checks informed plaintiff that the checks were intended as full payment; that the plaintiff indorsed and cashed each check, and thereby agreed to the settlement intended by the defendant corporation; that at the time of making said payments the defendants in good faith disputed the amounts due the plaintiff.

"The first transaction involved a carload of pine, of specified grade, widths, surfacing, and price per thousand board feet, 'F.O.B. mill,' with 2 per cent discount for cash. The lumber was to be shipped from Oregon to San Luis Obispo. Upon arrival of the shipment, defendant corporation paid the carrier's freight bill which covered freight from Spokane, Washington, to San Luis Obispo. The corporation then remitted $2,930.14 by check to the plaintiff, this sum representing the amount of the plaintiff's invoice less the cash discount and less $86.40 claimed as 'freight overcharge'—being the difference between the freight actually paid the carrier and the freight from Portland, Oregon.

"Subsequently defendant corporation ordered two more carloads of pine, one to be shipped to Grover City, California, and the other to Santa Barbara. Again, it was understood that the lumber was to come from Oregon, although the plaintiff testified that he informed defendants it would come from eastern Oregon. The lumber in these two carloads was rough-milled at Seneca, in eastern Oregon. One carload was then shipped to Brewster, Oregon, for 're-manufacture,' and from there transported to Grover City, while the other carload was shipped to Portland for 're-manufacture' and thence to Santa Barbara. On each of these shipments defendant corporation remitted to the plaintiff by check, deducting the 2 per cent cash discount and also deducting the items representing freight charges from eastern to western Oregon. In the case of the Santa Barbara car defendant also made certain deductions for 'scant loading,' 'improper surfacing,' and 'random widths.'

"Defendant C. V. Wilson testified that by 'F.O.B. mill' he understood to mean F.O.B. the 're-manufacturing' mill where the lumber was finished and from whence it was finally shipped; he and other witnesses also testified to a custom of the lumber trade that where Oregon lumber is sold 'F.O.B. mill' a zone freight rate is often specified, but if nothing is said about the zone, then the 'Portland rate,' from Portland, Oregon, to destination, will apply; in such case the custom is for the purchaser to charge back to the seller any excess

freight paid to the carrier. In none of the transactions here in question was there anything said concerning freight or the freight rate applicable except the bare phrase 'F.O.B. mill.' Plaintiff denied the existence of any such custom.

. ''In remitting for each of the three shipments, defendant corporation mailed to the plaintiff a check or draft, attached to which was a voucher identifying the shipment for which payment was intended and setting forth the amount of the corresponding invoice, with deductions noted. Printed at the top of each such voucher was the notation:

'' 'Payee will please detach and keep this statement. Payment of sight draft attached hereto is accepted in full settlement of account stated below, and endorsement thereof will constitute payee's receipt to the Pacific Coast Lumber Company of California.'

''The trial court found that defendants were indebted to plaintiff in the sum of $1,011.96; and with respect to the special defense found that the allegations thereof (except, of course, that the checks were actually sent) were untrue, thereby finding that it was not true that by the voucher attached to each check defendant corporation 'informed plaintiff that it intended the check as full payment of a certain disputed claim,' or that the vouchers 'informed plaintiff that' the said checks were intended as full payment.' The court further found that 'it is not true that plaintiff, by the acceptance, endorsement and/or depositing for collection of said drafts, or in any other manner, agreed to any settlement of the amount due plaintiff.'

''Appellants contend that the trial court's findings relating to the alleged accord and satisfaction were contrary to undisputed facts in evidence. With respect to the finding (implied) that plaintiff was not informed that the checks he received were intended by defendant corporation as payment in full, attention is directed to testimony of the plaintiff, as follows:

. '' 'Q. Did you talk to him (Mr. Wilson) before you cashed it? Did you call him up before you cashed it? (Referring to the payment on the first shipment.) A. Yes, I think I did; and then I felt, if they were going to be that way about it, the best thing for me to do was to cash the draft so they couldn't stop payment on the draft. This was not a check, it was a draft. I knew that, with a dispute of that type, that there would be a question as to my accepting that as final

payment, but I figured that a bird in the hand was better than nothing.

. . . . . . . . . . . . . .

" 'Q. Well, Mr. Potter, at the time you cashed those checks, you knew there was a dispute as to the amounts? A. Yes, because the amount was short on the draft. I figured we would be able to settle it one way or the other later.

" 'Q. Did you know the basis for the dispute? A. No, only from checking the deductions that I figured that they took. I knew that the freight amounted to so much. Q. Then you surmised, at least, that the deduction on one item was for freight? A. That's right. Q. And on the other item, you had notice of what the deductions were from the attached statement with the check, did you not? A. Yes, sir.'

"Appellants argue that 'on the basis of the foregoing testimony the ultimate fact irresistibly following is that the defendant corporation informed the plaintiff . . . that the check or draft tendered therewith was offered in full payment of a certain fully identified, disputed claim.' Appellants' remaining two contentions with respect to the findings are that there is no support in the evidence for the finding that by his acceptance of the checks or drafts plaintiff did not agree to a settlement, or for the finding that there was no bona fide dispute concerning the amount due.

"As conceded by appellants, 'A finding of the trial court upon conflicting evidence will not be disturbed on appeal if there is evidence of a substantial character which reasonably supports the judgment.' (*Fewel & Dawes, Inc.* v. *Pratt,* 17 Cal.2d 85, 89 [109 P.2d 650].) It is also well settled that the conclusions of a trier of fact from evidence or testimony that is susceptible of conflicting or opposing inferences will not be set aside by an appellate tribunal. (*Estate of Bristol,* 23 Cal. 2d 221 [143 P.2d 689].)

"Conceding the force of appellants' argument that the evidence clearly shows the existence of a dispute as to the amount due, and further that plaintiff was informed, by the fact that the checks were for less than the amount of his invoice, by the notations appearing on the attached vouchers, and through telephone conversations with defendants, that defendant corporation contested the particular freight items in question—it does not follow that the trial court erred, as a matter of law, in concluding that no accord and satisfaction was consummated.

"It was an essential element of defendants' proof of an accord and satisfaction that their tender of a check for less than the amount due be expressly conditioned that if the money be accepted, it is to be in full satisfaction. (1 Am.Jur. 222, 223.) As said in the cited authority, at page 223:

" 'As pointed out in the preceding section, in order that the acceptance of an offer of payment of a lesser sum in discharge of a greater shall result in the discharge, it is a necessary element that the offer be made upon condition that the creditor accept the offered sum in full satisfaction of the indebtedness. This principle finds frequent application in the case of checks and other remittances. In order that the acceptance of the check or remittance shall operate as a full discharge, the condition that it is to be accepted in full satisfaction of the pending claim or obligation must be expressly made or the circumstances must be such as to indicate clearly to the creditor that it is so sent.

" 'When the assent of the creditor is sought to be inferred from the acceptance of a less sum than that claimed to be due, the fact that such amount is offered in full discharge of the whole claim must have been communicated to the creditor in some unmistakable manner. Consequently, where a check is tendered, even though it accompanies an account, if there is no expression of the condition that it must be accepted in full payment, the acceptance of the check does not constitute an accord and satisfaction, as no agreement to that effect can be implied from the transaction. . . .'

"Under the particular facts of the case at bar, it would appear that the trier of fact was justified in concluding, despite the printed statement on the voucher, that the tender of each check or draft was not unequivocally stated to be on condition that it be accepted in full settlement. The language of *Owens* v. *Noble,* 77 Cal.App.2d 209, 215 [175 P.2d 241], quoting from *Biaggi* v. *Sawyer,* 75 Cal.App.2d 105, 114 [170 P.2d 678], is here pertinent: ' "Whether there was a dispute concerning the amount due and whether the tender was on condition that acceptance would be in full satisfaction, are primarily questions of fact for the trial court." In the case of *Work* v. *Associated Almond Growers,* 102 Cal.App. 232, 236 [282 P. 965], this court quoted from cited authorities as follows: "It is an essential element of accord and satisfaction by tender of a check, that the tender is subject to the condition that the acceptance of the check is satisfaction in full. This condition is not shown by the mere fact that the debtor ac-

companies the check with an account showing a balance equal to the amount of the check, and *it is disproved where the giving and acceptance of the check is followed by such conduct of both parties as clearly shows that they did not consider the check a final settlement of the debt.*" (Italics added.) Also see 1 Cal.Jur. p. 134, par. 10; *Lapp-Gifford Co.* v. *Muscoy Water Co., supra* [166 Cal. 25 (134 P. 989)]; *Duncan* v. *F. A. Hihn Co.*, 27 Cal.App. 152, 155 [148 P. 971]; *Wallace* v. *Crawford*, 21 Cal.App.2d 394, 404 [69 P.2d 455].'

"The record does not disclose conclusive evidence that the plaintiff was *explicitly* advised that his acceptance of the checks or drafts in any of the three transactions would be considered as an agreement to an accord and satisfaction. On the contrary, the actions of the parties indicate simply that the defendant corporation asserted that it was not liable for certain freight charges and refused to pay them. It is significant in this respect that the disputed freight charge was a separable item. The amount tendered by defendant corporation was an amount admittedly due. The trier of fact could well conclude that the amount tendered was not offered in settlement of a disputed claim, but, as above stated, in payment of a conceded indebtedness, leaving at large the question of from which point freight should be charged to the buyer. Upon analysis, the facts herein show that an acknowledged debtor has made a remittance of an amount admittedly due, and now seeks to have declared an accord and satisfaction because the creditor accepted what was concededly justly due him. The trier of fact was warranted in concluding that there was lacking an essential element of an accord and satisfaction, to wit, that the payment was offered and accepted in settlement of a disputed demand. Here no payment whatever was made on the 'disputed' demand.

"The situation here presented is one in which an acknowledged debtor, disputing one small separable item of an invoice received in the regular course of business, deducts from his remittance the amount he disputes and remits in the regular course of business an amount admittedly owed, accompanying his check with a voucher in customary form containing printed words to the effect that the remittance is accepted 'in full settlement of account stated below.' It cannot be held that as a matter of law in such circumstances there has been an accord and satisfaction or account stated.

" ' . . . to hold otherwise would put in the power of a sharp, shrewd business man frequently to take advantage of

the ignorant, uneducated, or unwary, and open the way, in the business and commercial world, to the perpetration of frauds rather than the honest settlement of disputes.' (*Sanders* v. *Standard Wheel Co.*, 151 Ky. 257 [151 S.W. 674, Ann. Cas. 1915A 954].)

"Appellants state that they make no point of the fact that the judgment runs against Mr. Wilson and Mr. Truitt, agents of defendant corporation, 'unless the suggestion is met with that the judgment ought to stand against the defendant individuals even though it be reversed as to their principal.' No such problem arising, the question need not receive further consideration.

"The attempted appeal from the order denying defendants' motion for new trial is dismissed. The judgment is affirmed."